## WILLIAM WOLCOTT *v.* B. F. HAMILTON.

*Attachment.   Change of Possession.   Crops.   Increase of Stock.*

1. H. was the owner and in the occupancy of a farm consisting of two parcels, the home place, on which were the buildings, and the back lot, used in connection with the other.  The home place was mortgaged to T., the back lot to D.  T. had foreclosed his mortgage, and the decree was about to become absolute.  Thereupon the plaintiff paid up the decree, and took a quit-claim deed from T.  At the same time he gave H. a bond for a deed.  Both the deed and bond were recorded.  H. continued to live with his family on the farm apparently in the same relation to it and the property upon it that he had always been.  Plaintiff (in reality) made a trade with H. to carry on the farm for a fixed price, and went to reside in the family of H. where he continued for about two years.  This was in 1881.  Nov. 12, 1883, H. executed a deed of the back lot to plaintiff, which was recorded the same day.  *Held*, that the crops raised on the home place in 1883, and 1884, and on the back lot in 1884, were attachable on the debts of H. as against the plaintiff.

2. The plaintiff has good title to the increase of stock sold to him by H. and remaining on the farm which was raised after the sale of the personal property to plaintiff.

3. The vendee of property exempt from attachment acquires a title to such property and its subsequent increase, good against the creditors of the vendor without any change of possession.

4. Fraud in fact must be found by the trier of fact, and cannot be inferred by the court.

Trespass *de bonis* and trover for certain personal property. The case was referred, and was heard at the September term of the Essex County Court, 1887, on the report of the referee, Royce, J., presiding.   Judgment, *pro forma*, for the plaintiff to recover of the defendant the sum of $507.37 and costs.   Exceptions by the defendant.

The referee reported the following facts: The property sued for had been taken and sold by the defendant as an officer on an execution against one Hiram Wolcott, and this was the trespass complained of.   Hiram and the plaintiff were brothers.   Previously to April, 1881, Hiram had owned, occupied and carried

on a farm in Charleston. This farm consisted of two parts, the home farm proper, on which were situated the buildings, and the back lot, which was used as a part of the farm in connection with the former parcel. Both lots were encumbered by mortgage, that on the home farm being held by one Tripp, and the other by one Dale. Hiram had lived on this farm for some fifteen years. Tripp had foreclosed his mortgage, on which the equity of redemption was about to expire, and Hiram's circumstances being such that he could not raise the money with which to pay the decree, he was likely to lose his farm. At this point, in April, 1881, the plaintiff for the purpose of assisting his brother, paid to Tripp the amount due on his decree, and took from him a quit-claim deed of the premises covered by his mortgage. At the same time he gave to his brother, Hiram, a bond agreeing to convey the premises to him upon the payment of certain moneys as therein specified. Both the bond and deed were recorded in the town clerk's office. The plaintiff at this time was living in New Hampshire on a farm which he owned there. About the time of the above transaction he leased this farm and came to live with his brother, Hiram, on the farm in question. Hiram still continued to live on the farm, to manage it and the property upon it in the same manner that he had always done, and maintained " such relations to the property as to indicate to an outside observer that his interest in it was the same that it had formerly been." William was there the greater part of the time at first, made it his home on the farm, worked on it, and hired and paid for some help in carrying it on. He continued on the farm in this relation for about two years, with occasional absences, which became more frequent the second year.

When plaintiff went to live on the farm he made a trade with Hiram by which Hiram was to work for him on the farm, and was to receive $250 per year for his services, and his wife to have the income from the butter made on the premises. Whatever Hiram did not take up of this $250 was to be applied on the amount due on the bond. It did not appear that any settlement had ever been made between the plaintiff and Hiram, or

that any accounts had ever been kept under this arrangement, or how much, if anything, had ever been paid by Hiram on the bond.

When the plaintiff went to live on the farm, as above, there was upon it certain personal property, among which was the mare sued for, known as the " Stevens mare." This mare had, at a previous date, been sold on execution against Hiram, and bid off at such sale by Stevens, who, after the sale, suffered her to go back into the possession of Hiram upon the understanding that when he paid the sum of $100 she should be his. Nothing having been paid, Stevens, in the fall of 1882, demanded his pay, and was about to take the mare in default of such payment. Thereupon the plaintiff, under an agreement with Hiram that he might own the mare, paid Stevens the amount his due, and left her upon the farm, as she had been previously.

There was also upon the farm a buggy wagon owned by Hiram. This had previously been attached as the property of Hiram, and the plaintiff had receipted to the officer for it. Subsequently a judgment was obtained against Hiram, and an execution taken out, and a portion of the execution paid by Hiram. Afterwards, Hiram having failed, on demand, to pay the rest of the execution, the officer demanded the wagon of the plaintiff, and it was then agreed between the plaintiff and Hiram that plaintiff might have the wagon by paying to the officer the balance due on the execution, and the plaintiff paid it. The wagon remained on the home place, as it had been, until the fall of 1882, when the plaintiff took it to the shop of one Goodwin to be repaired, and it was there when attached. The contract for the repairs was made between Goodwin and plaintiff, when the wagon was taken there as the wagon of the plaintiff.

There was also on the place when the plaintiff went there a Jersey cow and a young heifer. The cow was the last and only cow of Hiram, and was, as such, claimed by him as exempt from attachment. At the time of going there the plaintiff agreed with Hiram to take the cow at $40 and the heifer at $30, to take pos-

(6)

Wolcott v. Hamilton.

session the next fall. They remained on the place, in the possession of Hiram, so far as any of the property was in his possession until they were taken by the defendant on execution against Hiram.

The plaintiff also claimed to recover for one yearling heifer, one two-year-old heifer, and two two-year-old steers. The yearling heifer was brought by the heifer above referred to as the one purchased by the plaintiff for $30. The two-year-old heifer was one which the plaintiff had bought of Davis, when a calf, and brought on to the farm in the fall 1881. The steers were raised on the place after the plaintiff went there, one having been brought by the Jersey cow, and the other by the heifer bought for $30, as above stated.

The plaintiff further claimed to recover for a hog, which had been bought by him and brought on to the place while living there before the levy.

The plaintiff also claimed to recover for certain farm products which were raised on the home place in 1883 and 1884, and on the back lot in the season of 1884. When the plaintiff went to live on the place in 1881 there was resting on this back lot a mortgage. This the plaintiff agreed to pay, and did pay sometime that fall or the next winter. On the 12th of November, 1883, Hiram executed and delivered to the plaintiff a quit-claim deed of this lot, which was on the same day recorded. The lot continued to be used after this, as it had been before, in connection with the rest of the farm, and under the ostensible management and control of Hiram, in the same way that the remainder of the farm was.

It did not appear that the plaintiff paid Hiram anything for his interest in the home place or in the back lot.

*Z. M. Mansur* and *George N. Dale,* for the plaintiff.

The "Stevens mare" having been sold at sheriff's sale, which was not collusive, no change of possession was needed. *Boardman* v. *Keeler,* 1 Aiken 158; *Bates* v. *Carter,* 5 Vt. 602; *Gates* v. *Gaines,* 10 Vt. 346.

The Jersey cow being exempt and claimed as such by the debtor, no change of possession was necessary. *Foster* v. *McGregor*, 11 Vt. 595 ; *Jewett* v. *Guyer*, 38 Vt. 209.

The yearling heifer and the steers were raised on the place after the plaintiff went there. In the case of property not in existence there can be no change of possession. This same argument applies to the products of the farm. The plaintiff created them by his carrying on of the farm. He put his deeds upon record and did his business in his own name. *Elkins* v. *Hamilton*, 20 Vt. 627 ; *Hall* v. *Parsons*, 17 Vt. 278.

*A. J. & J. G. Wing*, for the defendant.

The facts detailed by the referee conclusively show that this whole arrangement was a conspiracy on the part of the plaintiff and Hiram Wolcott to cheat the execution creditor out of his debt. Hiram continued on the farm the same as before, managed and sold the property the same as before, and the plaintiff neither by word or act intimated to any one that there was any change in the title or possession of the personal property. The fraud is such that the court will not spend their time trying to pick out of this mass of fraud a colt, a wagon, a hog, a calf or even a $2 sap-pan, or 87 cents' worth of sap-nails. *Weeks* v. *Prescott*, 53 Vt. 57 ; *Stiles* v. *Shumway*, 16 Vt. 435 ; *Hall* v. *Parsons*, 17 Vt. 271 ; *Miles* v. *Warner*, 19 Vt. 609 ; *Reed* v. *Moody*, 15 At. Rep. 345.

The opinion of the court was delivered by

ROWELL, J. The plaintiff can recover for the wagon, whatever the character of his possession of the farm. The taking of it to Goodwin's shop for repairs, and its remaining there for about a year under the agreement found, where it was when levied upon, constituted a sufficient change of possession as against the creditors of the execution debtor. *Bailey* v. *Quint*, 22 Vt. 464. But he seeks to recover only $28 for it, its value less the amount the defendant paid for repairs upon it.

No claim is made for the shingles that were sold.

Plaintiff concedes that in respect of the cow sold on the *pluries*, which was the heifer he bought of the execution debtor in the spring of 1881, there was no such change of possession as to entitle him to recover for her ; but he claims to recover for the yearling heifer and one of the two-year-old steers, which came from that cow and were raised on the farm, on the ground that the doctrine of fraud in law does not apply to them, as they were not in existence at the time of his purchase of the cow, and were never the property of the debtor.

While there is no case in this State exactly in point, perhaps, because here the dam was attachable as the property of the vendor, yet *Bellows* v. *Wells*, 36 Vt. 599, is the same in principle. There it was held that a lessee might sell to his lessor all the crops that might be grown on the premises during the term, to secure the payment of the rent, and that no change of possession thereof when severed was necessary even as against the lessee's creditors. The court said that the reason for the rule requiring a change of possession does not apply to property that at the time of sale is not subject to attachment and has no real existence as property. *Leavitt* v. *Jones*, 54 Vt. 423, goes largely upon the ground that the lambs that came from the sheep that were not attachable, were not in existence at the time of the sale, and were never the property of the vendor.

*Hull* v. *Hull*, 48 Conn. 250, is much in point. That was replevin for six colts, the progeny of two brood mares that plaintiff had purchased of Murry in Boston, under an agreement that plaintiff might take them to Murry's farm in Connecticut, of which he was the superintendent, and there keep them and have all the colts they might bring, and the colts sued for were some they brought. One of Murry's creditors attached these colts while on the farm, and afterwards turned them over to Murry's assignee in insolvency, who sought to hold them on the sole ground that there was such a retention of possession by Murry after the sale as to render the transaction constructively fraudulent as against his creditors. But the court said that the doctrine as to retention of possession after the sale had no application to the

facts of the case; that a vendor cannot retain after a sale what does not then exist, nor what is already in the possession of the vendee.

The two-year-old heifer was bought of Davis by the plaintiff in the fall of 1881, and never belonged to the execution debtor; hence there is no question but plaintiff can hold it.

The other two-year-old steer came from the Jersey cow that the plaintiff bought of the debtor, and its non-liability to attachment by the vendor's creditors, notwithstanding his retention or possession of the cow after the sale and of the steer after it was born, as shown, may be put on the sole ground that as the cow was exempt from attachment, being the vendor's only cow, no change of possession was necessary in order to protect her from the vendor's creditors, and as none was necessary as to her, none was necessary as to her calves subsequently brought. *Leavitt* v. *Jones*, 54 Vt. 423.

The hog never belonged to the debtor, but plaintiff bought it of some other person and brought it on to the farm, and can recover for it.

The sucking colt came from the "Stevens mare," which the debtor once owned, but which had been, without collusion, sold on an execution against him, and immediately let back into his possession by Stevens, the purchaser, under an agreement that when he paid $100 for her she was to be his. By agreement all around, plaintiff subsequently bought her of Stevens and left her on the farm. The rule as to the necessity of a change of possession of property sold, does not apply to public sheriffs' sales. *Gates* v. *Gaines*, 10 Vt. 346. The plaintiff can, therefore, recover for the colt.

There is no real finding that the plaintiff ever bought any of the debtor's sugar utensils. But if there is, the case does not show any such change of possession of them as to entitle the plaintiff to hold them. He bought a sap-pan and 175 sap-pails, and he may recover for them.

The oats, the India wheat, the hay, and 181 bushels of potatoes, sold on the *pluries*, were raised on the home farm, and, as

it would seem, in 1884. It does not appear that the plaintiff lived on the farm either of those years, but that the debtor was in the sole and exclusive occupancy of it.

Now whatever the relation between the plaintiff and the debtor was after the former paid the decree and took his deed from Tripp, mortgagee to the debtor, and gave the debtor his bond for a deed, as against the creditors of the latter, he must be regarded as a mortgagor in possession ; for the statute provides that a foreclosure shall not transfer the title of the mortgaged premises as against attaching creditors, unless the party procuring the foreclosure causes the decree, or a certified copy thereof, to be recorded in the office of the clerk of the town where the land is situated, within thirty days after the expiration of the equity of redemption, which does not appear to have been done in this case. R. L. ss.768, 769. Hence these crops were attachable as the property of the debtor. *Cooper* v. *Cole*, 38 Vt. 185 ; explained in *Hamblett* v. *Bliss*, 55 Vt. 535, 540.

The potatoes and hay were sold at the debtor's dwelling-house, and it is claimed that this was not a public place, and that the sale is therefore void. But as the property was not taken from the plaintiff's possession, he must stand upon his own title for recovery ; and if it *was* illegally sold, it cannot avail him.

The potatoes and oats that were sold on the last execution were raised by the debtor on the back lot in 1884. When the plaintiff went to live on the farm in the spring of 1881, there was a mortgage on that lot, which he agreed with the debtor that he would pay and take the land, and some time during the fall or winter, he bought the mortgage and took an assignment of it, and thereafter the lot was used in connection with the home farm the same as it had been before; but it does not appear with much certainty how it had been used before ; the most that is found is, that it adjoined the farm and was used in connection with it for farming purposes, and that it did not appear whether the products of the two were kept separate or not. There is no finding to whom the parties treated the products of the lot as belonging. On Nov. 12, 1883, the plaintiff took a quit-claim deed of the lot from the debtor, which was recorded the same

day, and by which the plaintiff seems to have become the sole owner of the lot. Before this deed was given, the plaintiff had ceased to live on the farm, and both places were then and thereafter in the exclusive occupancy of the debtor, and that lot was left in his possession after the deed was executed, without any apparent agreement or disagreement on the part of the plaintiff; for the contract of service that is found did not embrace it, because when that was made, and for a long time after, the title of the lot was in the debtor; he was a mortgagor in possession up to the time he gave the deed, and after that, for aught that appears, he was a grantor left in possession by the laches of his grantee, and nothing more, which made him a tenant at sufferance, who is one who has once held a lawful title and continues his possession after his title has determined, without either the agreement or disagreement of the person entitled. *Patch* v. *Keeler*, 27 Vt. 252.

But although a tenant at sufferance has no title that he can transfer or transmit, or that is capable of enlargement by release, but has only a naked possession, and stands in no privity to his landlord, who may enter and put an end to the tenancy when he pleases; and although such tenant is not entitled to emblements, that is, hath not free entry, egress and regress, to gather crops that he sowed but did not reap during his tenancy, yet, until the determination of his tenancy he is not a trespasser, and the crops that he severs and gathers while his tenancy continues are his as against the landlord.

These potatoes and oats were raised on the back lot and harvested and taken away while the debtor's tenancy continued. Indeed it does not appear that it has yet been terminated. Hence, they belonged to the debtor as against the plaintiff, and so were attachable as the debtor's property.

The defendant claims that there was fraud in fact in the transactions between the plaintiff and the debtor. But no fraud in fact is found, and we cannot infer it.

· ' Judgment reversed, and judgment for the plaintiff for $279.56, with interest by way of damages on $186.37, parcel of said sum, from Oct. 11, 1883, and on $93.19, other parcel thereof, from Nov. 6, 1884, which are the times of taking the property respectively.

The Chief Justice and POWERS, J., did not sit, but the Chief Justice has read this opinion and concurs in it.