LEYSON, RESPONDENT, *v.* DAVENPORT ET AL., APPELLANTS.

(No. 2,560.)

(Submitted November 25, 1908.   Decided December 21, 1908.)

[98 Pac. 641.]

*Real Property—Wrongful Occupation and Detention—Mesne Profits—Damages Recoverable.*

1. In an action for the wrongful occupation and detention of real property, the rental value thereof during the time of such wrongful occupation was provable as an element of damages, under an allegation that the "reasonable value of the rents and profits for the use and occupation of the premises" was a certain sum; section 6069, Revised Codes, providing that "the detriment caused by the wrongful occupation of real property is deemed to be the value of the use of the property for the time of such occupation," etc.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by John H. Leyson against Lee Davenport and others. From an order granting plaintiff a new trial, defendants appeal.   Affirmed.

*Mr. C. M. Parr,* for Appellants.

Citing: *Matthias* v. *Foster,* 102 Ga. 556, 28 S. E. 606; *Isaac* v. *Minkofsky,* 20 Misc. Rep. 347, 60 N. Y. Supp. 506; *Preston* v. *Hawley,* 101 N. Y. 588, 5 N. E. 770; *Hill* v. *Coal Valley Min. Co.,* 103 Ill. App. 41; *Cambridge Lodge No. 9, K. P.,* v. *Routh,* 163 Ind. 1, 71 N. E. 148; 2 Boone on Code Pleading, p. 238; *Webbe* v. *Weaver,* 79 Ill. App. 657; *Alt* v. *Gray,* 56 N. Y. Supp. 657; *Atlanta K. & N. Ry. Co.* v. *McHan,* 110 Ga. 543, 35 S. E. 634; *Fender* v. *Rodgers,* 97 Ill. App. 280; *Janouch* v. *Pence,* 3 Neb. (Unof.) 867, 93 N. W. 217; *Adsit* v. *Kaufman,* 121 Fed. 355, 58 C. C. A. 33; *Cole* v. *Thompson,* 134 Iowa, 685, 112 N. W. 178.

*Mr. E. N. Harwood,* for Respondent.

Citing: *Wallace* v. *Berdell,* 101 N. Y. 14, 3 N. E. 769; *Nash* v. *Sullivan,* 32 Minn. 190, 20 N. W. 144; *Long-Bell Lumber Co.*

v. *Martin,* 11 Okl. 192, 66 Pac. 328; *City of Oklahoma City* v. *Hill,* 6 Okl. 114, 50 Pac. 253; *Patterson* v. *Ely,* 19 Cal. 28; *Yount* v. *Howell,* 14 Cal. 468; *Hicks* v. *Hering,* 17 Cal. 567; *Columbia & P. S. Ry. Co.* v. *Histogenetic M. Co.,* 14 Wash. 475, 45 Pac. 29.

MR. JUSTICE SMITH delivered the opinion of the court.

The district court of Silver Bow county sustained a motion to exclude all evidence under the following complaint:

"For cause of action against said defendants, plaintiff complains and alleges:

"(1) That on the —— day of July, 1899, plaintiff's predecessor in interest, James S. Watson, was the owner seised in fee and possessed and entitled to the possession of that certain lot or parcel of land and the valuable dwelling-house thereon, situate in the city of Butte, county of Silver Bow, state of Montana, more particularly described as follows, to-wit [description], and on or about said date said James S. Watson and one R. S. Feurtado entered into an agreement, by the terms and provisions of which the said Watson agreed to sell and convey said property to said Feurtado for and in consideration of the sum of $4,779.20, to be paid in 30 installments of divers sums of money, which sums said Feurtado promised in and by the terms of 30 promissory notes made and delivered by him on or about the date aforesaid to pay to said James S. Watson for the purchase of said property; that by the terms and conditions of the first of said notes said Feurtado promised to pay to said Watson on or before October 1, 1899, the sum of $172.50, the same being the largest amount mentioned in any of said promissory notes, and by the terms and conditions of the other 29 of said promissory notes there became due and payable an installment of over $150 of said agreed purchase price at the end of each period of three months succeeding the date last aforesaid.

"And it was further expressly agreed by and between said James S. Watson and R. S. Feurtado in and by the terms of said agreement that time is of the essence of said agreement; and it was further agreed by the terms, tenor, and effect of said

agreement that, in the event of default of payment of any of said installments mentioned in either of said promissory notes when due and payable according to the terms thereof, then all right on the part of said Feurtado to purchase said premises or otherwise in relation thereto became and was forfeit, null, and void.

"And it was further provided and agreed in and by the terms, tenor, and effect of said agreement that said R. S. Feurtado shall pay and discharge at maturity all taxes, assessments, liens, and other encumbrances then existing on said property at the time of making said agreement or thereafter assessed or levied thereon.

"(2) That said R. S. Feurtado entered into and used said premises for some time prior and up to about the 1st day of May, 1902.

"(3) That said R. S. Feurtado made default, failed and neglected to pay any of said installments which he promised as aforesaid to pay for the purchase of said property; and he also made default, failed, and neglected to pay the taxes duly assessed and levied on said property, to-wit, taxes levied by said county of Silver Bow in the sum of $28.39, and by the city of Butte in the sum of $20.80, for the year 1902, and taxes levied on said property by said city in the sum of $20.80, and by said county in the sum of $28.39, for the year 1903, and said property was heretofore sold for said taxes, and said Feurtado made default, failed, and neglected to pay any of said promissory notes or to perform any condition of said agreement made by and between him and said Watson to be done and performed by said Feurtado.

"(4) That all the while from and after default of payment of the first of said series of promissory notes by said Feurtado on October 1, 1899, when the same became due and payable according to the terms thereof, he, the said Feurtado, had no right, title, or interest whatsoever in or to or in relation to said property, and all the while he occupied said property after said last-mentioned date he became indebted to said Watson and his successors in interest for the use and occupation thereof.

"(5) That during all the times herein mentioned the title to said property in fee simple absolute was standing in the name of said James S. Watson, as shown by the public records of said county of Silver Bow, until it was sold, assigned, and conveyed to plaintiff as hereinbelow set forth.

"(6) That on April 17, 1902, 11 of said promissory notes, the principal of which aggregates $1,864.50, were past due and wholly unpaid, and said R. S. Feurtado had not only made default in the payment thereof, but had failed and neglected to perform any conditions of said agreement with said James S. Watson to be done and performed by said Feurtado; that at some time on or between the 17th day of April, 1902, and the 1st day of May, 1902, the said defendant Lee Davenport without right, title, or interest in said premises, and acting in collusion with said Feurtado, entered into said premises and into the use and occupation of the valuable dwelling-house situate thereon and occupied the same continuously from the 1st day of May, 1902, to the 1st day of January, 1903.

"(7) That on or about January 1, 1903, the defendant Lee Davenport without right, title, or interest in said premises, and acting in collusion with his brother, the defendant, John R. Davenport, and Anna Davenport, caused the latter to enter into and occupy said premises as pretended tenant of said Lee Davenport, and the said John R. Davenport, Anna Davenport, and Lee Davenport acting together in collusion have occupied and had the use and benefit of said premises continuously ever since said 1st day of January, A. D. 1903, until the 30th day of November, 1904, a period of 23 months, whereby said defendants became indebted to said James S. Watson and his successors in interest and assigns for the reasonable value of the use and occupation of said premises during said period, and interest thereon at lawful rates.

"(8) That the reasonable value of the rents and profits for the use and occupation of said premises during said period from January 1, 1903, to November 30, 1904, is $40 per month,

amounting to $920, but no part of which has been paid, although payment thereof has been heretofore demanded.

"(9) That heretofore, to-wit, on October 17, 1904, the said James S. Watson and his wife M. Lillian Watson, for valuable consideration, to-wit, over $4,000, to them paid by plaintiff, sold, assigned, transferred, set over, and delivered said premises and all their rights, demands, claims, accounts, and rights of action against defendants and all other persons for use and occupation thereof to this plaintiff, and ever since the last-mentioned date plaintiff has been and now is the owner and holder thereof, and plaintiff has demanded payment of said sum of $920 and legal interest thereon for the use and occupation of said premises by defendants as aforesaid but no part thereof has been paid.

"Wherefore, plaintiff demands judgment against said defendants for the sum of $920 and interest thereon from November 30, 1904, until paid, at the rate of 8 per centum per annum and all other proper relief."

The grounds of the motion were (1) "that the complaint does not state facts sufficient to constitute a cause of action"; and (2) "that the action is improperly brought against defendants for the reason that there never was any relation of landlord and tenant existing between plaintiff and defendants nor either of them, nor is there any privity of contract such as would make defendants, or either of them, liable to plaintiff for use and occupation of the premises in question." The court afterward entered an order granting the plaintiff a new trial, and from that order the defendants have perfected an appeal. We think the trial court was correct in granting a new trial.

Appellants advanced the contention that the action for use and occupation is founded on contract, express or implied, and, to sustain the action, it must appear that the relation of landlord and tenant existed between the parties or their privies. The following cases are cited to sustain this position, viz.: *Atlanta K. & N. Ry. Co.* v. *McHan*, 110 Ga. 543, 35 S. E. 634; *Fender* v. *Rogers*, 97 Ill. App. 280; *Janouch* v. *Pence*, 3 Neb.

(Unof.) 867, 93 N. W. 217; *Adsit* v. *Kaufman,* 121 Fed. 355, 58 C. C. A. 33; *Cole* v. *Thompson,* 134 Iowa, 685, 112 N. W. 178.

In this state there is but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, and the complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language. In the case of *Long-Bell Lumber Co.* v. *Martin,* 11 Okl. 192, 66 Pac. 328, the supreme court of Oklahoma said: "The relation of landlord and tenant never existed in the case. The case is one of occupation of land without color of title; but that fact would not prevent the plaintiff from recovering damages in this action, even if he had averred that the rental value of the premises amounted to a certain specific sum, since it has been expressly declared by this court that the 'rental value of the premises during the time the party is forcibly and unlawfully kept out of possession is the proper measure of damages.' "

Mr. Justice Field said in *Patterson* v. *Ely,* 19 Cal. 28: "The allegation of the value of the 'use and occupation, rents, and profits' of the premises for the period during which the defendants were in the wrongful possession and excluded the plaintiffs, was sufficient to charge the defendant without any averment that they received such rents and profits. These terms 'rents and profits,' are not used in a technical sense. The whole averment is, in effect, only that the value of the use of the premises, whilst the plaintiffs were excluded from their enjoyment, was the amount stated—a very proper averment as the basis of the damages claimed for the wrongful detention of the property."

Our Code, section 6069, under the Article heading "Damages for Wrongs," and the section heading "Wrongful Occupation of Real Property," provides: "The detriment caused by the wrongful occupation of real property, in cases not embraced in sections 6070, 6076 and 6077, of this Code, or provided in the Code of Civil Procedure, is deemed to be the value of the use of the property for the time of such occupation, not exceeding five years next preceding the commencement of the action or

proceeding to enforce the right to damages, and the costs, if any, of recovering the possession.''

The supreme court for Washington in *Columbia & P. S. R. Co.* v. *Histogenetic Medicine Co.*, 14 Wash. 475, 45 Pac. 29, used this language: ''Owing, no doubt, to the change of procedure wrought by the Codes in the various states, the action for mesne profits is now largely treated as if it were one of contract or for use and occupation.'' In the case of *Woodhull* v. *Rosenthal*, 61 N. Y. 382, the court said: ''The action for mesne profits is now in substance an action for use and occupation, and the complaint is to be drawn on that theory; and the court is to render judgment, as in actions of *assumpsit*, for use and occupation.'' (See, also, *Holmes* v. *Davis*, 19 N. Y. 488.) Sedgwick and Wait, in their work entitled ''Trial of Title to Land,'' say (section 649) : ''It is established by a preponderance of the authorities that the action [modern action for mesne profits] has been divested of many of the peculiarities of an action of trespass; or, rather, that it has acquired the characteristics of an action *ex contractu*, and the recovery in the modern practice is largely regulated by the principles governing actions upon contract as distinguished from actions of pure tort.''

In the case at bar the plaintiff claims damages in an amount equal to the ''reasonable value of the rents and profits for the use and occupation of the premises'' during the time the defendants wrongfully occupied the same, to-wit, in the sum of $920. We are of opinion that the ''value of the use of the property'' may properly be arrived at in this way.

The order appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.