POWER MERCANTILE CO., Appellant, *v.* MOORE MER-
CANTILE CO. et al., Respondents.

(No. 3,948.)

(Submitted December 19, 1918. Decided December 30, 1918.)

[177 Pac. 406.]

*Crops—Mortgages—Chattels Personal—Landlord and Tenant—
Tenant by Sufferance—Tenant at Will—Severance of Crops—
Injunction.*

Real Property—Execution Sale—Purchaser—Right to Possession.
1. *Semble:* It would seem that the purchaser of land at execution sale
is, as against the execution debtor, entitled to possession during the
period of redemption.

Crops—Chattels Personal.
2. Crops of wheat, oats, *etc.*, are emblements—*fructus industriales*—
and as such are usually treated as chattels personal, subject to sale or
mortgage, and levy of attachment or execution, even while still an-
nexed to the soil.

[As to crops or growths which are subject to execution as personalty,
see note in 55 Am. Dec. 161.]

Same—Not Real Property—Statutes.
3. Crops of the character above mentioned are not included within
the definition of "real property" declared by sections 4424–4429, Re-
vised Codes, because attached to land by roots, or incidental or appur-
tenant to it.

Same—Sale of Realty—Effect.
4. Where the owner of land sells it with right of immediate posses-
sion in the purchaser and without reservation of the crops then stand-
ing thereon, and the purchaser takes possession before severance, title
to the crops passes with title to the land.

Same—Tenant by Sufferance—Definition.
5. A tenant by sufferance is one who, as the result of the owner's
neglect or laches, wrongfully remains in occupancy after his right to
possession has ended.

Same—Tenant by Sufferance—Title to Crops.
6. The crops which a tenant by sufferance (or a trespasser) plants,
cultivates and harvests during his wrongful occupancy are his as
against the person entitled to possession of the land.

Same—Tenant at Will—Title to Crops.
7. A tenant at will, being rightfully in possession with the landlord's
or owner's express or implied consent, may, unless he holds over wrong-
fully, at the end of his tenancy harvest the crops sown and cultivated
by him during his occupancy.

Same—Mortgagor Holding Over—Title to Crops.
8. Where a mortgagor of farm lands sold on foreclosure holds over
after the expiration of the period of redemption and the issuance of
the sheriff's deed, he becomes a tenant by sufferance and as such owns

On the question of right of tenant at will to crops, see note in 41 **L. R. A.**
(n. s.) 404.

the crops planted, cultivated and harvested by him while in possession of the lands. (See par. 6 above.)

Same—Landlord and Tenant—Liability for Rent.

9. A tenant at will who has made use of lands by planting and harvesting crops, is liable for rent; and a tenant by sufferance who has done likewise must respond in a sum equal to the value of their use and occupation during his wrongful possession of them.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by the Power Mercantile Company against the Moore Mercantile Company and Firmin Tullock, as Sheriff of Fergus County. From an order refusing to grant a temporary injunction, plaintiff appeals. Affirmed.

*Messrs. Belden & De Kalb,* for Appellant, submitted a brief; *Mr. E. M. Hall,* of Counsel, argued the cause orally.

The question before the court is the priority between the rights of the Power Mercantile Company and of the chattel mortgagee, Moore Mercantile Company. Section 6836 of the Revised Codes, provides: "Upon a sale of real property the purchaser is substituted to and acquires the right, title, interest and claim of the judgment debtor thereto," *etc.* This section was adopted from California. The California Code section is section 700 of the Code of Civil Procedure. It is held under it that the certificate of sale signed by the sheriff is evidence of a sale whereby the entire equitable title is conditionally vested in the purchaser, subject to be defeated by redemption; but if not so redeemed, the certificate is evidence of the purchaser's right to a deed, which shall vest in him the legal title which remained in the judgment debtor. (*Foorman* v. *Wallace,* 75 Cal. 552, 17 Pac. 680; *Pollard* v. *Harlow,* 138 Cal. 390, 71 Pac. 648.) If redemption is not made within the time allowed by law, the right to conveyance becomes absolute without any further sale or other act to be performed by anybody. (*Page* v. *Rogers,* 31 Cal. 292; *Robinson* v. *Thornton,* 102 Cal. 675, 34 Pac. 120; *Duff* v. *Randall,* 116 Cal. 226, 58 Am. St. Rep. 158, 48 Pac. 66; *Breedlove* v. *Norwich Union Fire Ins. Soc.,* 124 Cal. 164, 56

Pac. 770.)    In Montana, the legal title vests in the purchaser by
virtue of the sheriff's certificate.    (*McQueeney* v. *Tooney,* 36
Mont. 282, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac.
561.)    We cite the following cases as showing that there is no
distinction between sales under mortgage foreclosures and sales
under execution, so far as the rights of the parties are con-
cerned, pending the period of redemption: *Duff* v. *Randall,* 116
Cal. 266, 58 Am. St. Rep. 158, 48 Pac. 66; *Breedlove* v. *Norwich
Union Ins. Soc.,* 124 Cal. 166, 56 Pac. 771; *Penryn Fruit Co.* v.
*Sherman-Worrell Fruit Co.,* 142 Cal. 643, 100 Am. St. Rep. 150,
76 Pac. 484.

In *Jones* v. *Adams,* 37 Or. 473, 82 Am. St. Rep. 766, 50
L. R. A. 388, 59 Pac. 811, 62 Pac. 16, where a mortgagor of
land gave a chattel mortgage on his interest in the growing crop
prior to a foreclosure sale of land, the title to the crops was
held to pass at such sale, since, until there was an actual sever-
ance, the crops pass with the title to the soil.    (See, also, *Bit-
tinger* v. *Baker,* 29 Pa. St. 66, 70 Am. Dec. 154; *Crews* v.
*Pendleton,* 1 Leigh (Va.), 297, 19 Am. Dec. 750; *Bear* v. *Bitzer,*
16 Pa. St. 175, 55 Am. Dec. 490.)    In 17 Cyc. 1291, under the
title "Executions," it is said: "The rule is well recognized that
growing crops belonging to the owner of the land pass as part
of the realty to a purchaser of such lands at an execution sale."
(See, also, *Freelon* v. *Adrian,* 161 Cal. 13, 118 Pac. 220; *Fish*
v. *Fowlie,* 58 Cal. 373; *Simpson* v. *Ferguson,* 112 Cal. 180, 53
Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484; *Treat* v. *Dorman,*
100 Cal. 623, 35 Pac. 86; *Whitney* v. *Huntington,* 34 Minn. 458,
57 Am. Rep. 68, 72, 26 N. W. 631; 27 Cyc. 1729.)

Every equity in this case is in favor of the plaintiff.    The
Moore Mercantile Company was charged with knowledge of the
law at the time it took the chattel mortgage in question.    It
knew as a matter of law that the crops placed by Samuell on
the land, and mortgaged to it, were a part of the realty and
would go to Power Mercantile Company unless Samuell re-
deemed.    It took a chance that Samuell would redeem.    No
act of the plaintiff was relied upon as an estoppel.    We have

found no decision where, as in Montana, the legal title vests upon sale, subject only to be defeated by redemption, that holds contrary to our contention.

*Mr. Charles J. Marshall* and *Mr. Merle C. Groene*, for Respondents, submitted a brief; *Mr. Marshall* argued the cause orally.

The position of respondents is as follows: That at the time of the execution sale, appellant became the owner of the land in question, subject only to said Samuell's right to the possession of said lands until the time for redemption had expired and sheriff's deed delivered to appellant; that Samuell was rightfully in possession of the premises during his redemption period, under obligations to pay rent therefor to appellant, and as a tenant for years or at will, and under the terms of our statutes he had the absolute right to plant and harvest all crops he raised upon the lands while he was thus rightfully in possession thereof; that in such case he had the absolute right to harvest, cut and remove the crops from the lands after the redemption time had passed; and it naturally follows that he could give a valid chattel mortgage upon the growing crops.

We think no question can be raised as to Samuell's right to remain in possession of the lands sold from the time of sale until the time for redemption had passed. (*Pollard* v. *Harlow*, 138 Cal. 390, 71 Pac. 454; *Harris* v. *Reynolds*, 13 Cal. 516, 73 Am. Dec. 600; *Walker* v. *McCusker*, 71 Cal. 594, 12 Pac. 724; sec. 6842, Rev. Codes 1907.)   On the basis of Samuell being in possession of the lands as one who has a right to repurchase the property on a certain and definite contract, as stated by this court in *McQueeny* v. *Toomey*, 36 Mont. 296, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561, we find the following: "As to the ownership of crops subsequently grown, the relation of the vendor and a purchaser in possession, under a contract of sale, is said to be analogous to that of landlord and tenant or of mortgagee and mortgagor in possession.   Accordingly the purchaser is the owner of the crops grown upon the land during

the time he is rightfully in possession thereof." (39 Cyc. 1627; *Killebrew* v. *Hines,* 104 N. C. 182, 17 Am. St. Rep. 672, 10 S. E. 159, 251.)

The case of *Yeazel* v. *White,* 40 Neb. 432, 24 L. R. A. 449, 58 N. W. 1020, while different from the case at bar to the extent that the statute in Nebraska gives the debtor the legal title to the land until redemption has expired, yet is in point, because in both that case and the one at bar the debtors were entitled to the possession of the land.

In *Monday* v. *O'Neil,* 44 Neb. 724, 48 Am. St. Rep. 760, 63 N. W. 32, the question is squarely presented and the court decides that the tenant of the execution debtor and the debtor himself are entitled to the growing crops.

MR. JUSTICE PIGOTT delivered the opinion of the court.

Claiming ownership and right to possession in itself of crops of wheat and oats severed from certain lands owned by it but not in its possession, plaintiff commenced this action seeking a perpetual injunction restraining defendants from interfering with plaintiff's control and use of the crops and from selling them, and praying also for an injunction *pendente lite.* The complaint states the facts to be in substance these: On and prior to June 3, 1914, one Samuell was the owner and in possession of certain lands, and on that day his interest was sold to plaintiff under writ of execution issued upon a money judgment against him. No redemption from the sale having been made within the year expiring on June 3, 1915, the sheriff on June 7 following made his deed to plaintiff granting to it the land so sold with the appurtenances. At these times crops of wheat and oats were growing upon the land and the title to these crops passed to plaintiff by virtue of the law and the sheriff's deed. Ever since June 3, 1915, plaintiff has been and is now entitled to possession of the land and crops, but defendant company, knowing at all times of the rights of plaintiff, in December, 1914, took from Samuell a chattel mortgage of the crops then growing and to be grown on the land, which it is proceeding to foreclose. and to that end has delivered a copy of

the mortgage to defendant sheriff who has advertised for sale and, unless enjoined therefrom, will sell, the crops which were attached and appurtenant to the land on June 3, 1915, and has wrongfully entered upon the land and removed a part of the crops. As will be observed, the complaint does not state who planted the crops, but the presumption is that Samuell who was in possession of the land did so. Nor does the complaint expressly state that Samuell was in actual possession of the land and crops subsequently to June 7, 1915; but it is pregnant of the inference that plaintiff has never had actual possession and that either Samuell himself or some person claiming under him has always been in occupancy of the land and possession of the crops, and harvested the latter when they matured. We understand the parties so to construe the complaint.

In response to an order to show cause why an interlocutory injunction should not be granted upon the complaint, defendant demurred for want of substance, and further objected because plaintiff had an adequate remedy at law. The court below refused to order an injunction *pendente lite,* and plaintiff appeals.

Upon the facts thus stated, we do not find it necessary to decide the question whether or not under the statutes of Montana, notably sections 6836, 6842, 6843, 6877 and 6879 of the Revised [1] Codes, and the holding in *McQueeney* v. *Toomey,* 36 Mont. 282, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561, the purchaser at execution sale of land of the execution debtor, is entitled, as against the debtor, to possession during the period of redemption. This question was reserved in *Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 717. The members of this court are inclined strongly to the opinion that the purchaser is entitled to such possession. Since, however, the parties assert and insist that no such right exists and that the execution debtor may remain in possession until the sheriff's deed issues, and since the conclusion which we have reached on the merits could not be changed were the contrary rule adopted, we shall proceed upon the theory advanced by the parties themselves.

The single ultimate question' that we shall consider is that of ownership of the crops.  If Samuell is the owner, the complaint does not state facts sufficient to constitute a cause of action.  We need not make further reference to defendant company which, as mortgagee, is threatening to take and sell the crops, for its right is derivative and depends for existence upon Samuell's ownership,—the company, as mortgagee, has as much right to take and sell the crops as Samuell would have if the mortgage had not been made, and we need not decide whether the mortgagee has a greater right.  We put defendants in the shoes of Samuell.

When stripped of averments not pertinent to the question of ownership of the crops, the complaint shows that Samuell owned and was in possession of land which was sold to plaintiff at execution sale on June 3, 1914, and that Samuel has always remained in actual possession; that the property has never been redeemed from the sale; that the year for redemption expired on June 3 and the sheriff's deed was made on June 7, 1915; that during the period of redemption Samuell had sowed the land in wheat and oats, and these were growing on the land when the redemption period expired and the sheriff's deed was executed; that he cultivated the crops and, when they were fit for harvest, severed them from the soil and has never parted with possession of them.

Wheat and oats are emblements,—*fructus industriales,*—for [2]   they are crops produced by the labor of man and are fruits of his industry; his planting, cultivation, and harvesting are yearly and the crops ''essentially owe their existence to'' his labor; the purpose of the planting ''is not the permanent enhancement of the land itself, but merely to secure a single crop, which is to be the sole return for the labor expended.''   Such crops are usually regarded and treated as chattels personal, subject to sale or mortgage, and levy of attachment or execution, as other chattels are, even while still annexed to the soil. (*Sparrow* v. *Pond,* 49 Minn. 412, 32 Am. St. Rep. 571, 16 L. R. A. 103, 52 N. W. 36; *Commonwealth* v. *Galatta,* 228 Mass.

308, 117 N. E. 343; *Raventes* v. *Green,* 57 Cal. 254; Chapter 86, sec. 16, Session Laws of Montana of 1913.) Crops of this char-
[3] acter are not included within the definition of real property declared by sections 4424–4429 of the Revised Codes (*Bjornson* v. *Rostad,* 30 S. D. 40, Ann. Cas. 1915A, 1151, 137 N. W. 567), although a casual reading of section 4427 might suggest that such crops are deemed to be affixed to land because attached to it by roots, and a like reading of section 4429 might suggest that they are incidental or appurtenant, in the technical sense, to land; but section 4427, so far as it refers to roots, vines, and shrubs, is intended to include the things produced essentially by the powers of nature only, *viz.: fructus naturales,* as distinguished from *fructus industriales;* and section 4429 does not, strictly speaking, embrace things such as annual crops produced by industry, for they are not used with the land for its benefit, the section dealing with rights of way and the like, which are servitudes upon other land and easements attached to the land benefited, as is disclosed also by section 4507. Crops of wheat and oats while growing are of necessity physically attached to land and accessory to its enjoyment, and for that reason and in that sense, and for certain purposes, are in a variety of circumstances incidental and accessory to land; for example,
[4] where the owner of land sells it with right of immediate possession in the purchaser, and without reservation of the emblements then standing on the land, and the purchaser takes possession before severance, title passes to the emblements as well as to the land, the reason, as it should seem, being that the grantor's intrusion by re-entry, and his cultivating and harvesting of the crops would be both a breach of the covenant of quiet enjoyment and a trespass upon and disturbance of the purchaser's possession, and in that event "the anomalous situation would be presented of the ownership by one of personal property upon the land of another without right in the owner to enter and take it." (*Herron* v. *Herron,* 47 Ohio St. 544, 21 Am. St. Rep. 854, 9 L. R. A. 667, 25 N. E. 420.) Whatever

the reason for the rule may be, the law on this subject is well settled.

So likewise, when by virtue of a decretal or execution sale, title to land becomes vested in the purchaser with right to present possession, title to annual crops sown by the former owner and then growing on the land passes, *sub modo,* to the purchaser and continues in him unless and until such ownership is lost, and one of the ways by which his *sub modo* ownership may be brought to an end is the occupation of the land by a tenant at sufferance who planted and cultivated the crops, and harvested them when ripe, and thus appropriates to himself, as owner, that which has now become detached from the soil and ceased [5] to be incidental or accessory to the land or the enjoyment of it. A tenant by sufferance is one who wrongfully remains in occupancy after his right to possession has ended. He holds over as the result of the owner's neglect or laches. He has the mere occupancy or actual possession without any title to the land or any estate in it; he is not in privity with the owner who may re-enter when he pleases and so terminate the tenancy with- [6] out notice. While he is not entitled to gather crops which he had sowed but which he did not reap during his wrongful occupation, still "until the determination of his tenancy he is not a trespasser, and the crops he severs and gathers while his tenancy continues are his as against" the landlord or owner entitled to possession. (*Wolcott* v. *Hamilton,* 61 Vt. 79, 17 Atl. 39.) The same rule, it may be remarked, applies to a trespasser who plants, cultivates and harvests annual crops. (*Page* v. *Fowler,* 39 Cal. 412, 2 Am. Rep. 462; *Lynch* v. *Sprague Roller Mills,* 51 Wash. 535, 99 Pac. 578.) A tenancy by sufferance may be converted into one at will, and this change results, for example, when the owner who is entitled to possession permits the tenant by sufferance to retain possession in such circumstances as are inconsistent with the tenant's wrongful holding and show implied consent to his continuing possession.

As to a tenant at will, a situation somewhat different is pre- [7] sented, for he is a tenant rightfully in possession with the

landlord's or owner's express or implied consent; and his occupation does not become wrongful until he holds over after his tenancy is determined, which termination may in Montana be accomplished and re-entry made by the landlord's giving notice and taking the steps prescribed by statute. (Rev. Codes, secs. 4502–4504.) Unless he becomes a wrongdoer by holding over (in which event it should seem that thenceforth he would be a tenant by sufferance) he may take the annual products of the soil, and may cultivate and harvest the crops growing at the end of his tenancy. (Rev. Codes, sec. 4519.) He is, therefore, at all times the owner, as against the landlord, of the crops, whether growing or severed.

To the facts of the instant case we apply these long-established principles of law,—principles from which there is [8] little, if any, dissent; and in making the application we assume as correct the theory of the parties that although the execution sale on June 3, 1914, transferred to plaintiff the legal title of Samuell to the land, leaving in Samuell simply the personal privilege to redeem (*McQueeney* v. *Toomey,* 36 Mont. 282; 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561, *supra; Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 717, *supra*), yet plaintiff had no right to possession until the sheriff's deed was made on June 7, 1915. Upon this theory plaintiff had the right on June 7, 1915, to immediate possession of the land and the crops which Samuell had planted thereon while in lawful possession, and which were then growing. At once upon the making of the sheriff's deed Samuell became tenant by sufferance, for he continued in possession wrongfully. Plaintiff could have brought that tenancy to an end, without notice, by re-entry, and if it had done so prior to severance of the crops it would have thereby perfected its title to, and have become the owner of, the crops. But it permitted by supineness, or neglect, or laches, Samuell to cultivate and gather the crops. Hence Samuell, and not plaintiff, is the owner of them. The fact that the crops were planted by Samuell before his occupancy became wrongful, is of no moment. This, we think, is clear upon prin-

ciple; and it finds direct support in *Lyons* v. *Adel,* 39 S. D. 317, 164 N. W. 56, where the precise question was decided. There, as here, the seeds for the crops were sown by the former owner during the year allowed to him for redemption; he was permitted to remain in actual possession of the land sold, and to harvest the crops after the redemption period had expired and the sheriff's deed executed. The court said, in substance, that the rule is well established that a mortgagor holding over after the expiration of the period of redemption and the issuance of the sheriff's deed, is a tenant by sufferance and as such is the owner of the crops which he has planted, grown, and harvested while in possession of the land, holding the facts of the case then before the court to be within the general rule that crops planted upon land by a mere intruder are the property of the owner of the land, so long as the crop remains unsevered, but that when the crop which had been so planted and cultivated has been severed from the soil by the intruder during his wrongful possession, he himself is entitled to the crop as against the owner of the land, and this whether he came into possession of the land lawfully or not, "provided he remains in possession till the crop is harvested."

In our opinion, Samuell was a tenant by sufferance. But if he was, according to the common law, a tenant at will, or if section 4481—designating estates at will as comprising one of four classes of estates in real property "in respect of the duration of their enjoyment"—has the effect of destroying estates by sufferance as known at common law, and making them estates at will (which we think unlikely), the result so far as the question of ownership is concerned must be the same. In that event, Samuell, as tenant at will, would be entitled, as has been shown, to rights greater than those possessed by a tenant by sufferance; for he would own the annual products of the soil, whether severed or not, and might have cultivated and harvested the crops growing at the end of his tenancy.

Plaintiff is not, however, without remedy. If Samuell was a [9] tenant at will he is liable *ex contractu* for rent *eo nomine;*

if he was a tenant by sufferance he is at least liable *ex delicto* under section 6069 of the Revised Codes, for a sum equal to the value of the use and occupation of the land during his wrongful possession of it. (*Leyson* v. *Davenport,* 38 Mont. 62, 98 Pac. 641.)

Since the complaint fails to show that plaintiff has any right or title to the crops, consideration of the objection to the complaint on the ground that it does not state facts sufficient to invoke injunctional relief were plaintiff the owner, need not be determined, and that question also is reserved.

The order refusing to grant an injunction *pendente lite* is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.