HAMILTON, Respondent, v. HAMILTON et al., Appellants.

(No. 3,573.)

(Submitted November 4, 1915.  Decided January 3, 1916.)

[154 Pac. 717.]

*Real Property — Mortgages — Foreclosure—Redemption—Statutes—Sheriff's—Tender—Sufficiency.—Laches.*

Appeal and Error—Complaint—Ambiguity—Waiver.
  1.  An attack upon a complaint on the ground that it is ambiguous and uncertain may not be made for the first time on appeal; the objection not having been urged by special demurrer, in the trial court, is conclusively deemed waived.
Same.
  2.  *Held,* under the above rule, that where the complaint in an action to secure the cancellation of a sheriff's deed to land sold under foreclosure contained averments—the one to the effect that the sale was void for a given reason, and the other that plaintiff was ready and willing to pay the amount necessary to effect redemption—the contention made on appeal that because of these inconsistent allegations plaintiff was estopped to claim a right to redeem—in effect an attack on the complaint for ambiguity—*held* not maintainable.
Real Property — Mortgages—Foreclosure—Redemption—Statute—Construction.
  3.  *Held,* that the statute relating to redemptions (Rev. Codes, sec. 6836), though apparently appertaining exclusively to sales under levies by execution upon judgments as such, nevertheless includes sales made under foreclosure decrees.
Statutes—Adoption from Other State—Construction.
  4.  Upon the adoption of a statute from another state, the language of which has been construed by its court of last resort, this state adopts also the construction thus placed upon it.
Real Property — Mortgages — Foreclosure — Right of Redemption — Sale on Execution.
  5.  The right granted a debtor by section 6837, Revised Codes, to redeem his property lost either under foreclosure or execution sale, is a personal privilege and not a property right of the kind mentioned in section 6821, Revised Codes, as being subject to levy under execution, and cannot therefore be sold under involuntary sale so as to cut off the right of redemption.
  [As to who may redeem from foreclosure, see note in 21 Am. St. Rep. 245.]
Same—Right of Redemption—Equity, of Redemption—Definitions.
  6.  The statutory right of redemption is the right a judgment debtor has to regain property which he has lost by sale under process; the equity of redemption is the right the mortgagor has, prior to foreclosure, to discharge his indebtedness and thus clear his property from the encumbrance of the mortgage.
Same—Right of Redemption—Extension of Time—Equity.
  7.  Where a judgment debtor is prevented, either directly or indirectly by the act of the purchaser at a foreclosure sale from complying with the statute by making a timely tender of an amount sufficient to re-

deem the property, equity will intervene and extend the time within which to make redemption.

Same—Extension of Time—Mistake by Sheriff.

8. A judgment debtor who failed to redeem property sold at foreclosure sale within the statutory time, because he had no actual knowledge of the date of sale and was prevented from acquiring it from the official records by an error which fixed the date about two months later than that on which it took place, was entitled to relief by cancellation of the sheriff's deed.

Same—Redemption—Sheriff Agent of Purchaser.

9. For the purpose of redemption, section 6840, Revised Codes, makes the sheriff the agent of the purchaser at a foreclosure sale; hence a false—though innocent—representation made by the officer is in legal effect a misrepresentation by the purchaser, and precludes him from profiting by it.

Same—Mistake by Sheriff—Effect on Right to Redeem.

10. Where by mistake of a sheriff the date of an involuntary sale was fixed at a time later than when it actually took place, the time of redemption was extended correspondingly, and with it his authority to accept payment of the redemption money.

Same—Redemption Statute—Construction.

11. While a "redemptioner," as defined in section 6837, Revised Codes, must, when redeeming property sold under forced sale, pay to the purchaser the amount of his purchase and any prior lien he may hold on the property, the judgment debtor may redeem by paying simply the amount of the purchase price with interest, etc. (section 6838).

Same—Construction of Statute.

12. The provision in section 6839, Revised Codes, that "if the judgment debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner," construed to mean that if the judgment debtor redeem from a redemptioner, he must make the payments made by the latter; otherwise his duty in the premises is as indicated in paragraph 11, *supra.*

Same—Tender—Effect.

13. Under section 4949, Revised Codes, a tender has the same effect upon all the incidents of the obligation as actual payment, hence if a debt is secured by a lien upon property, or by sureties, the tender operates as a release of the lien or the sureties, the creditor being left to his personal claim against the debtor.

Same—Tender—What Sufficient.

14. After a tender had been made and refused, plaintiff was not required, in order to keep it good, to deposit the money in court and keep it there. It was sufficient that, having established his unconditional tender, he brought the amount in when required to do so.

Laches—What Does not Constitute.

15. Under the rule that mere delay short of the period of limitation prescribed as a bar to the particular action does not require the imputation of laches, *held* that where fourteen months were permitted to elapse before plaintiff began an action looking to the cancellation of sheriff's deeds to lands sold under foreclosure, he was not estopped by laches.

*Appeal from District Court, Fergus County, Tenth Judicial District; J. B. Leslie, a Judge of the Eighth Judicial District, presiding.*

ACTION by Robert E. Hamilton against Robert S. and Mary A. Hamilton. Judgment for plaintiff. Defendants appeal from it and an order denying them a new trial. Affirmed.

*Mr. J. C. Huntoon, Mr. Edward C. Russell* and *Messrs. Walsh, Nolan & Scallon,* for Appellants, submitted a brief; *Mr. Huntoon* and *Mr. Russell* argued the cause orally.

Plaintiff is not entitled to be allowed to redeem. He has waived the benefit of any tenders made and the right to redeem by attacking the validity of the sale and insisting upon the invalidity as the primary ground of relief. (*Bunting* v. *Haskell,* 152 Cal. 426, 93 Pac. 110.)

The respondent's right of redemption was subject to execution and levy. Having been levied upon and sold, he was without any right to redeem the property. In *Raymond* v. *Blancgrass,* 36 Mont. 449, 464, 15 L. R. A. (n. s.) 976, 93 Pac. 648, it is said: "The statutes of Montana relating to the kind of property that may be taken on execution are very broad, and under them any species of property may be seized, sold and the proceeds thereof applied to the satisfaction of the judgment." If the Code had intended that such a right should not be the subject of attachment or levy, it would have been so declared. The wisdom of the law allowing such a right to be attached is not a matter open to discussion. (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Osterholm* v. *Boston etc. Min. Co.,* 40 Mont. 508, 107 Pac. 499.) In addition, it may be added that such a right is recognized as a substantial one. (*Parker* v. *Dacres,* 130 U. S. 43, 32 L. Ed. 848, 9 Sup. Ct. Rep. 433.)

The following authorities sustain our contention: Freeman on Executions, 182; 17 Cyc. 764, note 98; *Lynch* v. *Burt,* 132 Fed. 417, 67 C. C. A. 305; *Knight* v. *Fair,* 9 Cal. 117; *Robinson* v. *Thornton,* 102 Cal. 675, 34 Pac. 120; *Pollard* v. *Harlow,* 138 Cal. 390, 71 Pac. 454, 648. It is true that some of these decisions lay stress upon the rule existing in the particular jurisdiction that the legal title remained in the judgment debtor, but that does not prevent the cases being authority for the proposition that a

substantial right, capable of barter and sale, not, by statute, exempt from execution, must necessarily, under our statute, be held to be the subject of levy.

Sale of right of redemption not subject to redemption. The rights of a judgment debtor after sale of his property consist of the right of possession for one year and of the right to repurchase or redeem his property. Therefore, the right is less than a leasehold of two years unexpired term, and under section 6836 the sale is absolute. If the title did not pass to the purchaser at the sheriff's sale and remained in the defendant, it might logically be held that the right of redemption would follow any and every subsequent sale of the property, but, under the rule which obtains in Montana, the title passes to the purchaser. It therefore follows that all that the defendant has left are rights in the nature of a chattel real, and as his right of possession is less than two years, the provision just referred to applies to it. (*Summerville* v. *Stockton M. Co.*, 142 Cal. 529, 76 Pac. 243; *People* v. *Westervelt*, 17 Wend. (N. Y.) 674; Freeman on Executions, sec. 317.)

The respondent did not keep good his alleged tenders. The statutes of Montana require payment, not merely a tender, to effect a redemption, and a tender is not equivalent to payment unless it is kept good. (38 Cyc. 158; 21 Ency. Pl. & Pr. 548; *Wadleigh* v. *Phelps*, 149 Cal. 627, 87 Pac. 93.) Many authorities hold that there must be a payment into court, as will be seen in the books just referred to. We do not go that far, because it is not necessary to do so. We do insist that, even though not paid into court, the tender must be kept good in some proper manner.

The respondent's alleged tender of the amount in the case of the Sloan ranch, *viz.*, of the third cause of action, should have been made to the purchaser and not to the sheriff. The sheriff had delivered the deed to the purchaser. His functions were at an end. No tender could be made to him. (*Tharp* v. *Kerr*, 141 Iowa, 26, 119 N. W. 267.)

The decree should have allowed interest and required payment thereof. (*Peugh* v. *Davis,* 113 U. S. 542, 28 L. Ed. 1127, 5 Sup. Ct. Rep. 622; *Bissell* v. *Heyward,* 96 U. S. 580, 24 L. Ed. 678; *Thornburgh* v. *Fish,* 11 Mont. 53, 27 Pac. 381.) These cases hold that interest does not stop unless tender is kept good.

*Mr. Wm. Wallace, Jr.,* for Respondent, and *Messrs. John G. Brown, T. B. Weir* and *I. B. Kirkland,* of Counsel, submitted a brief; *Mr. Wallace* argued the cause orally.

Because the plaintiff was misled by the false date stated in the foreclosure sale certificate of the Sloan ranch, and by the resultant records, as well as the conduct of the sheriff, equity will regard as timely his tender made within a year after the false date. It is a recognized principle of equity jurisprudence that redemptions are regarded with favor (27 Cyc. 1800; *Moore* v. *Bishop,* 20 Ky. Law Rep. 1622, 49 S. W. 957) ; and in conformity therewith section 5715, Revised Codes, declares void any contract in restraint of the right.

Peculiarly applicable to the situation presented in this case are the observations of the supreme court of the United States, in the case of *Graffam* v. *Burgess,* 117 U. S. 180, 29 L. Ed. 839, 6 Sup. Ct. Rep. 686, wherein a redemption after the expiration of the statutory period, was allowed.

As judgment creditor the defendant caused the foreclosure sale, became the purchaser thereat, himself accepted the false sale certificate, and caused a copy to be filed with the recorder as notice to the world. Thereby (but especially by holding that certificate during the whole year after the true sale date) he estopped himself from claiming that the sale date was other than June 16, 1909, as therein stated. In *French* v. *Edwards,* 13 Wall. (U. S.) 506, 516, 20 L. Ed. 702, the court said: ''The vendee, by accepting the conveyance with this solemn declaration of the officer, as to the manner in which his power was exercised, would be estopped from denying that the fact was as recited.'' (See, also, 17 Cyc. 1330; 2 Herman, Est. & Res. Adj., sec. 770;

*Benson* v. *Bunting,* 127 Cal. 532, 536, 78 Am. St. Rep. 81, 59 Pac. 991.)

The judgment debtor's right of redemption from a judicial sale of realty owned by him in fee is an option privilege of which he may not be deprived by a second judicial sale of "his right, title and interest" in the same property. We maintain, first, that the statutory right to redeem is a mere option privilege not subject to seizure or sale under execution. (27 Ency. 1800; 11 Am. & Eng. Ency. Law (2d ed.), 213; *Pollard* v. *Harlow,* 138 Cal. 390, 71 Pac. 454, 648; *Phillips* v. *Hagart,* 113 Cal. 552, 54 Am. St. Rep. 369, 45 Pac. 843; *Merry* v. *Bostwick,* 13 Ill. 398, 54 Am. Dec. 434; *Powers* v. *Andrews,* 84 Ala. 289, 4 South. 263.) Second, that if subject to be so sold, it is necessarily itself the subject of redemption. In the state of New Hampshire the equity of redemption may be sold on execution, because the judgment debtor holds the legal title during the redemption period. But in *Russell* v. *Fabyan,* 34 N. H. 219, the court said: "This right to redeem is also subject to be levied upon and sold as often as a creditor supposes he can realize any part of his debt by a sale, until some one of the levies or sales become absolute. But these sales have each inseparably connected with them the right of redemption." To hold that the second sale was not also subject to redemption would make it operate to extinguish not only the redemption right of the judgment debtor, but of all other judgment creditors, who by the same statute (sec. 6838, Rev. Codes) are given a year also in which to redeem from the original sale. And this result would ensue though there had been no advertisement or offer of the redemptioner's right of redemption at the second sale. And third, that if so sold, it must be advertised and offered as a right of redemption, otherwise it is but a sale of the realty, and, therefore, itself subject to redemption.

When redeeming from the purchaser, the judgment debtor need not tender amounts due on other liens held by the former. (*Sweetland* v. *Transberg,* 176 Fed. 641.) In 17 Cyc. 1331, it is said: "Where the judgment debtor seeks to redeem, * * * he

may do so by paying the purchaser the amount of his bid plus the statutory percentage and other lawful charges. He need not, however, pay any other liens upon the property held by the purchaser."

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff against the defendants, his father and mother, to procure a decree directing the cancellation of four sheriff's deeds covering lands sold on foreclosure and execution sales belonging to the plaintiff, or permitting the plaintiff to exercise the right of redemption. The events out of which the controversy arose may be stated as follows:

On May 29, 1907, the plaintiff was the owner of several pieces of real estate which, for convenience, may be referred to as the McDonald, Dichl & Mohler, Sloan and Knudson ranches, besides two quartz lode mining claims designated as the Arizona and Standpat, all situated in Fergus county. For some years the father (hereafter referred to as the defendant, because Mary A. Hamilton is only a formal party) had held three mortgages executed to him by the plaintiff, separately covering the first three ranches named, and also two unsecured promissory notes of the plaintiff. On May 29, 1907, the defendant brought an action in the district court of Fergus county on these notes (the cause being numbered 1602), and on November 19, 1907, recovered judgment thereon in the sum of $4,661.35. On June 7, 1907, the defendant brought an action to foreclose the mortgage on the McDonald ranch (cause 1606). On May 10, 1909, this action resulted in a decree directing the sale of the property to satisfy an indebtedness found to be $1,163.45, with interest and accrued costs. On June 16 the property was sold by the sheriff under the decree, the defendant becoming the purchaser for $1,213.97, the full amount due, with interest and costs of sale. A certificate was issued to the defendant on that date and a duplicate thereof was filed with the county clerk. On

July 25, 1908, the defendant brought an action (cause 1774) to foreclose the mortgage on the Diehl & Mohler ranch. On February 15, 1909, this action resulted in a decreé directing a sale of it to satisfy an indebtedness of $1,406.03, with interest and accruing costs. On June 2 the property was sold by the sheriff under the decree, the defendant becoming the purchaser for the sum of $1,481.82, the full amount due with interest and costs of sale. A certificate was issued to the defendant on that date, and a duplicate thereof filed with the clerk and recorder on August 6. On July 25, 1908, the defendant brought an action (cause 1775) to foreclose the mortgage on the Sloan ranch. On February 16, 1909, this action resulted in a decree directing a sale of the property to satisfy an indebtedness of $5,837.43, with interest and accruing costs. On April 28 the property was sold by the sheriff, the defendant becoming the purchaser for the sum of $6,017.24, the full amount due with interest and accruing costs. A certificate was issued to him on June 16, 1909, and a duplicate thereof filed with the clerk of the county on August 6. By mistake of the sheriff this certificate recited that the sale had taken place on June 16 instead of April 28. On June 22, 1909, the defendant caused execution to issue upon the judgment recovered in cause No. 1602, directing the sheriff to satisfy the same by sale of the property of plaintiff. Under this execution, on July 21, the sheriff having advertised for sale, but without a levy of the execution, again sold the property covered by the three mortgages, for the sum of $235, the defendant becoming the purchaser. A certificate of sale was issued to him on August 6, and thereafter, on September 7, a duplicate thereof was filed with the county clerk. The purpose of this latter proceeding was to sell the plaintiff's "equity of redemption," or, in other words, to cut off his statutory right of redemption from the foreclosure sales. The published notice of sale described the subject of it as "all the right, title and interest" of plaintiff in the lands designated by legal subdivisions, as in the notices of the foreclosure sales. It did not mention the right of redemption. On July 22, 1909, in cause 1608,

the defendant recovered judgment upon another claim which he held against the plaintiff for the sum of $946.67, which was duly docketed, and at the time this action was tried was unsatisfied. On September 7, 1909, under an *alias* execution issued on the judgment in cause 1602, the sheriff sold the Knudson ranch and the Arizona and Standpat claims, the defendant becoming the purchaser. The price paid for the former was $1,500, and for the latter $500. Certificate of this sale was issued on September 7 and filed with the county clerk on September 14. On October 11, 1909, under a later *alias* execution issued on the judgment in cause 1602, "all the right, title and interest of defendant" in the Knudson ranch and the two mining claims was sold by the sheriff and purchased by the defendant for $250. By this sale the defendant sought to cut off plaintiff's right to redeem this property. The balance remaining due after these various sales upon the judgment in cause 1602 was $3,086.22, with accrued interest. On May 7, 1910, the sheriff executed to the defendant a deed to the Sloan ranch. As soon as the year following each of the other sales expired, the defendant obtained sheriff's deeds. He thereupon, by appropriate actions prosecuted to judgment, secured possession of all the lands in question. The plaintiff was not personally present at any of the sales, but remained away under the advice of his attorneys, that it would be better to permit the sales to take place and to regain the title by redemption.

The complaint contains five causes of action. The first relates to the McDonald ranch. Reciting in detail the proceedings referred to above resulting in the sale under the decree of foreclosure and the right of redemption, under the execution in cause 1602, it alleges in substance that on June 14, 1910, the plaintiff tendered to the sheriff in cash, for the purpose of redeeming the premises, the full amount necessary to effect redemption, which included the amounts paid at both sales, with interest, costs, taxes and all legal charges, but that the sheriff refused to accept the money and to permit him to redeem; that plaintiff "then was, and ever since has been and now is, ready

and willing and hereby offers to keep said tender good, and to pay the whole of said redemption money into this court for the benefit of whomsoever shall be entitled thereto whenever this court shall order or permit plaintiff so to do''; that on September 2, 1910, the sheriff executed and delivered to the defendant a deed purporting to convey the premises to him, who thereupon caused the same to be recorded by the county clerk; and that thereafter the plaintiff was ousted from possession at the suit of the defendant, as stated above; that "plaintiff avers upon his information and belief that said deed is voidable and should be voided, for the reason that the said premises were sold at said sheriff's sale *en masse* instead of in separate lots, and for the further reason that plaintiff has made a good and sufficient tender of the sum necessary to redeem said property from said sales within the time for redemption therefrom, and has done all things necessary and within his power to accomplish a redemption of said property, and would have redeemed the same but for the wrongful refusal of said sheriff to accept the redemption money when tendered as aforesaid." The second and fourth causes of action are substantially repetitions of the first, with the exception of the difference in the dates of the events which occurred during the course of the proceedings and the amounts tendered to effect redemption. The tender for the redemption of the Diehl & Mohler ranch, to which the second cause of action relates, is alleged to have been made on June 2, 1910, and the sheriff's deed on September 2. The tender for the redemption of the Knudson ranch and the mining claims, to which the fourth cause of action relates, is alleged to have been made on June 14, 1910, and the sheriff's deed on September 2, 1910. The third cause of action, which relates to the Sloan ranch, is, with the exception of the following, substantially the same as the foregoing. It is alleged that on June 16, 1909, the sheriff made his return of sale under the decree and filed it in the office of the clerk of the district court on August 6; that he stated therein that he had sold the property to the defendant on June 16, 1909; that in the certificate delivered to the defendant

and the duplicate filed with the county clerk he also stated that the sale had been made on June 16; that early in the month of April, 1910, "and while the said records and certificates in this court and in the recorder's office showed the date of said sale to have been June 16, 1909, this plaintiff having no knowledge of the actual date of said sale, caused an investigation of said records to be made for the purpose of advising himself of the date thereof, and of the expiration of the time within which he would be entitled to redeem therefrom, and caused inquiry to be made of the sheriff also with regard thereto; and that he was advised by said sheriff and informed by those who had made said investigation of such records that the sale had taken place on June 16, 1909." Then follow allegations to the effect that the plaintiff had no knowledge prior to June 10, 1910, that it was claimed that the sale had been made at an earlier date or of the fact that it had taken place at an earlier date, and that if he had had such knowledge or the means of obtaining the same and had not been misled by the statement of the sheriff and the return of sale and the certificate accepted by the defendant, he could and would have made redemption of said property from the sale prior to April 28, 1910. It is alleged: "The delay of this plaintiff in making said redemption and tender as to said decretal sale on June 14, 1910, was due to his being misled by said certificate of sale and return of sale and the information of the sheriff and the record, and that he acted in reliance thereon and in the honest belief induced thereby that his right to redeem from said decretal sale did not expire until June 16, 1910." It is further alleged: "That on June 1, 1910, said sheriff, acting under the direction of defendant Robert S. Hamilton, moved this court for permission to withdraw his return upon said order of sale, filed in said foreclosure suit on August 6, 1909, and to amend the date declared therein as the date of said sale by changing the '16th day of June' to the '28th day of April,' and for leave to refile said return, as so amended, as of date August 6, 1909, which motion was supported by the affidavit of this defendant Robert S. Hamilton and said sheriff, alleging that a

mistake had been made in said return of sale and in said certificate of said sale, in the date of said sale; and on August 10, 1910, this court permitted the withdrawal of said return and the change of date thereof, and the refiling of the same, all of which was accordingly then had and done.'' The tender to effect redemption is alleged to have been made on June 14, 1910. The fifth cause of action is a combination of all the others. It was abandoned at the trial and therefore does not require notice here.

The relief demanded is the following: That each of the sheriff's deeds and all proceedings had under each of the sales be canceled; that if said sales be not canceled, the plaintiff be permitted to redeem, and that upon such redemption the defendants be required to convey each and all of said premises to the plaintiff; that he recover his costs, and that he have such other relief as in the premises may be just and equitable. The questions of fact presented by the pleadings and agitated at the trial are these: (1) Were the proper tenders made by the plaintiff to effect redemption? (2) Was the plaintiff misled as to the date of sale of the Sloan ranch, so that his tender made on June 14 was in time? (3) Had he up to the date of the trial held himself in readiness to pay the amounts tendered? The court found these issues in favor of the plaintiff and rendered a decree adjudging him entitled to redeem all the lands upon depositing in the hands of the clerk within thirty days from the date thereof the sum of $12,651.29; that upon such deposit the sheriff's deeds and also the judgments under which the defendant obtained possession be canceled; and that plaintiff recover his costs to be paid to him out of the sum deposited by him with the clerk. The plaintiff made the required deposit. The cause is here on appeals by the defendants from the decree and from an ·order denying them a new trial.

1. It is argued that the plaintiff is not entitled to redeem because he has waived the benefit of any tenders made, and the right to redeem, by attacking the validity of the sales on the ground of irregularity and insisting upon their invalidity

[1, 2]   as the primary ground of relief.   It is said that the two allegations in the complaint, the one asserting that the sales were void because they were made *en masse* and therefore not pursuant to the requirements of the statute (Rev. Codes, sec. 6830), and the other that the plaintiff was and still is ready and willing to pay the amounts necessary to effect redemption from them, are so far inconsistent that the making of the former is conclusive against the right to redeem.   This contention is in effect an attack upon the complaint on the ground of ambiguity or uncertainty, and may not be availed of in this court, for the reason that the point was not made by special demurrer in the court below.   Whether the court should have sustained a demurrer upon this ground, had it been interposed, we are not required to decide.   Our office is to determine whether the plaintiff made a case by his evidence upon which he is entitled to relief within the allegations of his complaint considered from any point of view.   This is the rule when seasonable attack has been made in the trial court by general demurrer only.   (*Donovan* v. *McDevitt*, 36 Mont. 61, 92 Pac. 49; *Hicks* v. *Rupp*, 49 Mont. 40, 140 Pac. 97; *Raymond* v. *Blancgrass*, 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648.)   It is the rule applicable to a complaint which is merely ambiguous or uncertain in the allegation of the facts upon which the demand for relief is predicated, because the right to object to it by special demurrer on either or both of these  grounds is conclusively  deemed  to have been waived after issue is joined.   (Rev. Codes, sec. 6539.)

2. It is contended that the statute relating to redemptions [3]  does not include sales made under foreclosure decrees. This contention cannot be maintained.   Section 6836 of the Revised Codes declares: "Upon a sale of real property, the purchaser is substituted to and acquires the right, title, interest and claim of the judgment debtor thereto; and when the estate is less than a leasehold of two years unexpired term, the sale is absolute.   In all other cases the property is subject to redemption, as provided in this chapter."   The chapter in which this provision is found (Chap. I, Tit. IX, Part II), apparently

relates exclusively to sales under levies by execution upon judgments as such, and not to mortgage foreclosure sales. The provisions relating to the latter are found in Chapter I, Title X, Part II. In the latter there is found no provision on the subject of redemption. If nothing other than these provisions were to be considered, we should be inclined to the opinion that a sale under a decree of foreclosure would *ipso facto* finally cut off the rights of the judgment debtor. Section 6836 was first enacted by the territorial legislature in 1867 and has been a law in this jurisdiction ever since. (Laws 1867, Prac. Act, sec. 229; Laws of Montana 1872, Civ. Prac. Act., sec. 279; Laws 1879, Code Civ. Proc., sec. 329; Rev. Stats. 1879, Code Civ. Proc., sec. 329; Comp. Stats. 1887, First Div., sec. 340; Code Civ. Proc. 1895, sec. 1233.) It was adopted from the Practice Act of California, the source of many of the provisions of our Code of Civil Procedure (Cal. Civ. Prac. Act, sec. 229), with the addition of the clause defining the rights acquired by the purchaser at execution sale. This clause, however, did not in any way affect the right of redemption granted. Section 231 of the California Act fixed the time within which the redemption might be effected at six months. The same limitation was provided by our own statute until it was changed to one year by the Act approved March 12, 1895. (Rev. Codes, sec. 6838.) Prior to its enactment by the territorial legislature, the provision had been construed by the supreme court of California as broad enough to include within its design sales made under decrees of foreclosure. In *Kent* v. *Laffan,* 2 Cal. 595, decided in 1852, after quoting the provision, Mr. Justice Heydenfeldt, speaking for the court, said: "I think the language of this Act is sufficiently comprehensive to include within its design sales of real estate under decrees of foreclosure of mortgages. A contrary doctrine might be held by ingenious and technical construction of that portion of the Act which regulates executions upon judgments. But in all such cases I consider it safest to look to the obvious policy of the law; and to maintain such policy against a mere hesitation caused by the inapt language of the

Act. This is also the application of the common law principle, which declares that remedial statutes shall be beneficially construed.'' It may be noted that when the decision was made, the California Act also contained special provisions for foreclosures, none of which granted the right of redemption. This case was recognized and followed as authority in *Guy* v. *Middleton,* 5 Cal. 392 (1855); *Harlan* v. *Smith,* 6 Cal. 173 (1856); *McMillan* v. *Richards,* 9 Cal. 365, 70 Am. Dec. 655 (1858), and *Stout* v. *Macy,* 22 Cal. 647 (1863). While in *McMillan* v. *Richards,* Mr. Justice Field intimated a doubt as to the correctness of the decision in *Kent* v. *Laffan,* he said, ''It has been repeatedly recognized as law by this court and has been acted upon by parties for years; rights of property have been acquired under it which we are not at liberty at this day to destroy.'' There is no decision by this court expressly adopting the construction given the provision by the California court; yet it was many years ago recognized by this court as settled law. (*State ex rel. Thomas Cruse Savings Bank* v. *Gilliam,* 18 Mont. 94, 31 L. R. A. 721, 44 Pac. 394, 45 Pac. 661.) In that case the question at issue was whether the Act approved March 12, 1895, extending the period of redemption from six months to one year, impaired the obligation of a mortgage contract made prior to its enactment. In the original opinion it was held that it did not. On rehearing the decision was reversed because of the decision of the supreme court of the United States in *Barnitz* v. *Beverly,* 163 U. S. 118, 41 L. Ed. 93, 16 Sup. Ct. Rep. 1042; overruling the decision of the supreme court of Kansas in the same case (55 Kan. 466, 49 Am. St. Rep. 257, 31 L. R. A. 74, 42 Pac. 725). The decision was upon a question not before the court, unless upon the assumption that the statute (section 6836, *supra*) includes sales on mortgage foreclosures. This decision may therefore be deemed as a distinct recognition and adoption of the law as declared in *Kent* v. *Laffan.* Again, in section 7537 of the Revised Codes, is found this provision: ''A judgment creditor having a judgment which was rendered against the testator or intestate in his lifetime, may redeem any real estate of the

decedent from any sale under foreclosure or execution, in like manner and with like effect as if the judgment debtor were still living.'' This provision has been upon our statute books for more than thirty years. Both this court and the legislature having thus accepted and adopted the construction given the statute in *Kent* v. *Laffan*, and it having long been acted upon as a rule of property in this state, we think it would be entirely wrong for this court to repudiate it at this late day, thus disturbing titles acquired under it. Especially applicable to these circumstances is the rule which we have frequently recognized: [4] That when a statute is adopted from another state, the language of which has been construed by the court of last resort of the state from which it comes, we adopt the construction also. (*State* v. *O'Brien,* 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399; *Sharman* v. *Huot,* 20 Mont. 555, 63 Am. St. Rep. 645, 52 Pac. 558; *Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Butte & Boston etc. Min. Co.* v. *Montana Ore etc. Co.,* 25 Mont. 41, 63 Pac. 825; *McQueeney* v. *Toomey,* 36 Mont. 282, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561.)

The case of *Thomas* v. *Thomas,* 44 Mont. 102, Ann. Cas. 1913B, 616, 119 Pac. 283, cited by counsel, does not suggest anything contrary to the case of *Kent* v. *Laffan,* but merely holds that the sheriff derives his power to make a sale on foreclosure, from the decree and not from the order of sale, and that such an order need not possess the formalities of the writ of execution provided for in section 6817 of the Revised Codes. Neither is the case of *Parker* v. *Dacres,* 130 U. S. 43, 32 L. Ed. 848, 9 Sup. Ct. Rep. 433, in point. It does hold that the legal right of redemption is statutory. It also holds that the mode of exercising it pointed out by the statute must be pursued. There is nothing in either of these holdings applicable to the case in hand. Furthermore, in their answer the defendants aver that plaintiff owned the right to redeem the lands covered by the mortgages from the date of each of the sales until July 21, 1909, when the several rights were sold under execution in cause 1602, and

that defendant then became the purchaser and owner. This allegation defines the position assumed by defendant throughout the trial in the district court, *viz.,* that he had cut off plaintiff's right to redeem, and hence that though it had existed either by virtue of the statute or under the terms of the decree, he had himself become the owner of it by purchase at the execution sales. That the right exists was therefore an admitted fact in the case. The contention made in this court for the first time that the right never existed is, to say the least, too late to avail the defendant. It is also entirely inconsistent with the next contention made by counsel, *viz.,* that plaintiff's right to redeem was subject to sale under execution, and that it having been levied upon and sold, plaintiff was left without right.

3. Section 6837 of the Revised Codes declares: "Property [5] sold subject to redemption, as provided in the last section, or any part sold separately, may be redeemed in the manner hereinafter provided, by the following persons or their successors in interest: 1. The judgment debtor, or his successor in interest, in the whole or any part of the property. 2. A creditor having a lien by a judgment, mortgage or attachment, on the property sold, or on some share or part thereof, subsequent to that on which the property is sold. If a corporation be such creditor, any stockholder thereof may redeem, in case the officers of such corporation refuse so to do. The persons mentioned in the second subdivision of this section are, in this chapter, termed redemptioners." Sections 6838 and 6839 prescribe within what time and how the judgment debtor or redemptioner may effect redemption, what are the rights of successive redemptioners, and what payments must be made by each. In the latter section is found this provision: "In all cases the judgment debtor shall have the entire period of one year from the date of the sale to redeem the property." It authorizes the execution of a deed by the sheriff only at the expiration of the year. It was held in *McQueeney* v. *Toomey, supra,* that the right of redemption puts the debtor in a position analogous to that of one who has a right to repurchase the property on cer-

tain fixed and definite terms. This conclusion was deemed necessary in view of section 6836, which declares what the purchaser at the sale acquires. If he acquires "the right, title, interest and claim of the judgment debtor," no interest is left which is the subject of levy and sale. Clearly, then, the purpose of the legislature in enacting section 6837 was to declare it to be the public policy of this state that when an unfortunate debtor has lost his land, either under mortgage foreclosure or execution sale, he shall have the opportunity to regain it by complying with the conditions imposed. And not only so, but that those who have acquired liens inferior to that to satisfy which the sale was made, shall resort to the process of redemption, and not to levy and sale, in order to protect themselves from loss. The right is therefore a personal privilege and not a property right, and hence does not come within the category of any of the interests enumerated in section 6821 as subject to execution. The language quoted from section 6839: "In all cases the judgment debtors shall have the entire period of one year from the date of the sale to redeem the property," as clearly manifests this purpose as if the statement had been: "The right of the debtor to redeem shall not be subject to levy under execution"; otherwise the provision would be without meaning or purpose. The result would be that the right, not only of the judgment debtor, but also of every redemptioner, could be taken away by an assiduous creditor, and thus the whole policy of the law would be defeated. (*Merry* v. *Bostwick,* 13 Ill. 398, 54 Am. Dec. 434; *Powers* v. *Andrews,* 84 Ala. 289, 4 South. 263; *Shaw* v. *Lindsey,* 60 Ala. 344.) It is said by Mr. Freeman in his work on Execution (second edition), section 182, that since the judgment debtor had, pending the period of redemption, the possession of the property and a beneficial as well as a legal estate therein, no reason can be assigned why this estate may not be subject to levy and sale under execution against him. This may be true in those states in which, as in Iowa (*Curtis* v. *Millard,* 14 Iowa, 128, 81 Am. Dec. 460), the levy and sale vests in the purchaser only an inchoate estate

which may ripen into a legal estate upon the execution of the sheriff's deed. It cannot be so under our statute, for it contains no provision giving the debtor the right of possession during the period of redemption, section 6843 seeming to imply that the judgment creditor is entitled to demand and receive the value of the use and occupation during that period. This view is in conflict with the conclusion announced in *McMillan* v. *Richards, supra,* on the same point; but it may not be overlooked that section 231 of the California Practice Act in force at the time the decision was made, as has already been noted, did not define the character of title acquired by the purchaser at an execution or foreclosure sale, as does section 6836, *supra.*

The California section has been amended in the particular referred to and is now identical with ours. (Cal. Code Civ. Proc., sec. 700.) We have not been referred to any decision construing it. Doubtless the court would not give it a construction in harmony with our view. But be this as it may, if the debtor's interest is subject to execution, it is because it is an interest in the real estate. If it be such, the conclusion cannot be avoided that the sale of it must also be subject to redemption (*Russell* v. *Fabyan,* 34 N. H. 218) ; otherwise, again, the provision quoted from section 6839 is without purpose or meaning. The use of the expression, "successors in interest," in section 6837, does not furnish the basis for an inference to the effect that the right of the debtor may be taken by involuntary sale. It can mean nothing more than that one who has succeeded to the title to the property, or has been substituted to the rights of the debtor or redemptioner, has the same rights as has he. When, for illustration, property is subject to a mortgage, or judgment, or attachment lien, it is still the property of the debtor. A judgment creditor may become his successor by purchase at execution sale from which there has been no redemption, as was the case in *Pollard* v. *Harlow,* 138 Cal. 390, 71 Pac. 454, 648; but this is fundamentally a different case from that of an attempted sale under execution of the statutory right of redemption. The distinction between this right and what was

[6] known as the equity of redemption at the common law is fundamental. The one is the right a judgment debtor has to regain property which he has lost by sale under process. The other is the right the mortgagor has, prior to foreclosure, to discharge the indebtedness and thus clear his property from the encumbrance of the mortgage. The former comes into existence only after the foreclosure sale, and is of purely statutory origin (27 Cyc. 1800; 11 Am. & Eng. Ency. of Law (2d ed.), 213); the other is founded upon the mortgage contract. The term "successor" is also broad enough to include a grantee to whom the judgment debtor has transferred his statutory right, (*McQueeney* v. *Toomey, supra; Phillips* v. *Hagart,* 113 Cal. 552, 54 Am. St. Rep. 369, 45 Pac. 843.) The question whether this is so does not arise here. Our conclusion therefore is, that the attempted sales of the right of redemption were nugatory, and that by virtue of them defendant did not cut off plaintiff's right.

4. The next question presented is, whether the evidence is sufficient to support the findings. It is so voluminous that it will be impossible to quote and examine it in detail. There can be no question but that it amply justifies the court's conclusion that on June 14, 1910, the plaintiff tendered to the sheriff, at the Fergus County Bank in Lewistown, amounts respectively sufficient to effect redemption of the McDonald, Sloan and Knudson ranches and the mining claims, including the amount bid at the alleged sale of the right to redeem, made of the former on July 22 and of the latter on September 7, 1909, with statutory interest at twelve per cent per annum on the principal sums (Rev. Codes, sec. 6838), together with the taxes, assessments and charges paid by the defendant, with interest on them at eight per cent per annum. At that time the plaintiff, accompanied by his wife and his attorney, Mr. Marshall, was at the bank, and Mr. Marshall having previously ascertained and cast up the separate amounts required, the plaintiff tendered them separately in gold coin to Mr. Tullock, the under-sheriff, who had come in at the request of Mr. Waite, the president of the bank. Uncertain whether the exact amounts ascertained by

Mr. Marshall's calculations would be sufficient, he tendered a considerable sum in excess in each case. Mr. Tullock, though expressing himself as satisfied that the amounts were sufficient refused to accept them, because he had been instructed by the sheriff and Mr. Huntoon, the attorney of the defendants, who had exclusive charge of the sales and also of the matter of redemption, not to accept them, Mr. Huntoon's theory evidently being that the right of redemption in each case had been taken away by the sales under the judgment in cause 1602. Thereupon the total of the three amounts was tendered and refused. There were present at the time Mr. Waite, the president, Mr. Osweiler, the assistant cashier, and Mr. Nave, an acquaintance of plaintiff who had aided in procuring the money. Mr. Marshall, Mr. Waite and Mr. Osweiler testified as to what took place. Upon the refusal of Mr. Tullock to accept the money, Mr. Belden, an attorney of the plaintiff, came in and with the same money made like tenders, as mortgagee of the plaintiff. These tenders were also refused. There is some conflict in the evidence as to whether tenders were made in separate amounts to redeem from each sale, or whether only a single tender of the gross amount was made by Mr. Belden. It is sufficient to say on this point that the evidence preponderates in favor of the court's finding that the tenders were made by the plaintiff as stated by Mr. Marshall and as the court found. Admittedly, no tender was made at any other time to redeem the Sloan ranch, the sale of which had taken place on April 28, 1909. It does not follow, however, that this fact conclusively precluded the court from inquiring into the circumstances and determining whether the plaintiff was excusable for neglecting to make the tender in this behalf before the expiration of the year after that sale. It [7] is well settled that if the judgment debtor is prevented by the act of the purchaser, whether judgment creditor or not, directly or indirectly, from complying with the statute, equity will intervene to protect his right and extend the time of the period of redemption. (*Graffam* v. *Burgess*, 117 U. S. 180, 29 L. Ed. 839, 6 Sup. Ct. Rep. 686; *Schroeder* v. *Young*, 161 U. S.

334; *Benson* v. *Bunting,* 127 Cal. 532, 78 Am. St. Rep. 81, 59 Pac. 991.) Indeed, we do not understand that counsel for the defendant contend to the contrary. They apparently accept this as the law, because their contention is that the court was in error in finding that the plaintiff was misled by the sheriff and the record made by him after the sale proceedings, and thus prevented the plaintiff from effecting redemption within [8] the statutory period. The evidence introduced on this point tends to show that early in April the plaintiff, in order to make ready to redeem, made inquiry of the sheriff as to the date of sale. The sheriff being unable to give him the information on the subject, because he had apparently forgotten the date, he then went to the sheriff's office. Such record as he found there showed the date as June 16. He then examined the certificate of sale in the county clerk's office and the return of sale in the office of the clerk of the district court. Not content with this, he had an investigation made by his attorneys and was advised by them that June 16 was the correct date. All these records showing that the sale had been made on June 16, he reached the conclusion that this date was correct. The notice of the sale was published in the "Fergus County Democrat," to which the plaintiff was a subscriber. It described the Sloan ranch by legal subdivisions only. Notice of the sale of the Diehl & Mohler ranch was being published at the same time and in the same way. The Sloan, McDonald and Diehl & Mohler ranches were being advertised by the same description, for sale on July 21. This was the notice of the sale of the right of redemption. But there was no intimation in the notices that this was the subject of the sale. The plaintiff having been advised by his attorneys not to attend the sales did not do so, nor did he read the notices. If we bear this in mind, it does not appear strange that he should have been led by the record to believe that he had until June 16 to effect redemption. Indeed, the defendant himself, who had procured the sales and had attended all of them and seems to have been determined to preclude redemption by any means in his power, did not discover the mistake until he came to apply

for his deed on May 5; and while it is true that a few days after
April 28 the defendant applied to the court for, and subsequently
obtained, an order permitting the sheriff to correct his return
and certificate, and that the attention of the plaintiff was then
called to the error, the time for redemption had then expired.
An offer by him to redeem at that time or any time earlier than
he did after the end of the year would have been peremptorily
rejected. The fact that actual knowledge was then brought to
him could not affect his right. And if, as he testified and the
court found, he neglected to offer to redeem earlier than he did
because he had no actual knowledge of the correct date until
after the expiration of the year, and could not acquire it from
the official record, he ought not to be denied relief. For though
the sheriff was not, in a strict sense of that term, the agent of
the plaintiff, the defendant may not be permitted to profit by
his error; on the contrary, to the extent to which the plaintiff
suffered wrong by the error of the sheriff, the defendant is
[9] responsible. For the purposes of redemption the statute
makes the sheriff the agent of the purchaser at the sale. (Rev.
Codes, sec. 6840.) It is his duty to know when the time for
redemption expires. Therefore, a false representation made by
him upon the subject is in legal effect a misrepresentation made
by the purchaser or creditor, and, though it be innocently made,
the latter cannot profit by it. (2 Herman on Estoppel and Res
Judicata, sec. 770; 17 Cyc. 330; *French* v. *Edwards,* 13 Wall.
[10] (U. S.) 506, 20 L. Ed. 702.) And just here it may be
remarked that a tender of payment to the sheriff on June 14
was just as affectual as if it had been made to the defendant,
for if the mistake of the sheriff extended the time of redemp-
tion until June 16, it also extended the authority of the sheriff
to accept payment.

As to the tender made on June 2 to redeem the Diehl & Mohler
ranch, the evidence is not entirely satisfactory, but, in our opin-
ion, it is sufficient to sustain the conclusion that it was made
on that date as alleged. In brief, it appears that having previ-
ously ascertained through his attorneys from the return of the

sheriff that that date was the last day of the redemption period, the plaintiff obtained from one Shoemaker a sufficient amount in gold to effect the redemption, and intrusted it to Messrs. Marshall and Belden, his attorneys, for that purpose. The attorneys proceeded to the sheriff's office. Mr. Marshall testified that they, in the presence of the plaintiff and in his behalf, tendered the amount bid at the foreclosure sale and also the sale of the right of redemption, together with interest, taxes and charges as required by the statute, and in order to cover any error which they might have made in casting up the gross amount, $130 besides; and that the under-sheriff refused to receive it because he had been instructed by the sheriff and Mr. Huntoon not to do so. This was the only direct evidence on the subject. The truth of it is rendered questionable by the statement of the plaintiff that he was not present, by that of Mr. Belden that he made the tender as plaintiff's mortgagee, and also by that of Mr. Tullock, the under-sheriff, that the only tender he had any recollection of was that made by Mr. Belden. That Mr. Belden did make such a tender must be accepted as true, because the documentary evidence introduced in connection with his testimony shows that he held a mortgage on the property, executed to him and recorded on that day, which was brought to the attention of the sheriff by a certificate of the county clerk and an affidavit by Mr. Belden as required by the statute (Rev. Codes, sec. 6841). On the other hand, it cannot be doubted that the money tendered belonged to the plaintiff, and that the attorneys were present then to effect a redemption in his behalf. The other testimony tends to show that the mortgage was executed to Mr. Belden merely as a device to enable him to make a tender as mortgagee. It is altogether improbable that, such being the case, he made the tender exclusively as mortgagee with money which belonged to his client. We think the evidence justifies the conclusion that a tender was made as testified to by Mr. Marshall on behalf of the plaintiff, and that the subsequent tender by Mr. Belden was a precautionary measure merely, as evidently was the tender by Mr. Belden in the

same capacity at the bank on June 14; for in each case when his tender had been refused, he returned the money to the plaintiff.

5. Counsel argue that the tenders were ineffective because they did not include the balance of the judgment in cause 1602, [11, 12] and that recovered in cause 1608. They rely upon the provision found in section 6839: "If the judgment debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner." This provision we must construe in connection with its context in the section in which it is found and with section 6838, bearing in mind the distinction in the meaning of the terms "debtor" and "redemptioner" as defined in section 6837, *supra*. Section 6838 declares: "The judgment debtor, or redemptioner, may redeem the property from the purchaser any time within one year after the sale, on paying the purchaser the amount of his purchase, with one per cent per month thereon in addition up to the time of redemption, together with the amount of any assessment or taxes which the purchaser may have paid thereon after purchase, and interest on such amount, and if the purchaser be also a creditor having a prior lien to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest." Considering for the moment this provision alone, the distinction between the obligation cast upon the judgment debtor and the redemptioner is apparent. The first may redeem by paying to the purchaser the amount of his purchase, with interest, *etc.* The latter must, in addition, pay any prior lien held by the purchaser. As pointed out in *Sharp v. Miller*, 47 Cal. 82, the reason for the distinction is that if the redemptioner were permitted to redeem without paying the prior lien of the purchaser, the result would be that the lien would be defeated, for the title would pass to the redemptioner free from it. If the judgment debtor redeems, the lien of the purchaser will be preserved, because the judgment debtor is restored to his estate, and the lien will at once attach. The same distinction is observed by the supreme court of Minnesota

in *Warren* v. *Fish,* 7 Minn. 432 (Gil. 347), in which an identical provision was considered.

The question, then, arises whether the provision quoted above from section 6839 imposes upon the judgment debtor an additional obligation. It must be borne in mind that the two sections were enacted at the same time and as the provisions by which the privilege granted by section 6837 was to be made available. As section 6838 declares the obligation to be discharged by the judgment debtor and the first redemptioner, so section 6839 is primarily concerned with the rights and obligations of successive redemptioners. It declares particularly when and how and within what time each redemptioner may acquire the right of his predecessor, what payments he must make and what notice he must give to the sheriff to protect his rights. It further declares when the purchaser or the redemptioner may obtain a deed, with the proviso that the judgment debtor shall have the entire year in which to redeem. Then follows the provision quoted above, which counsel insist adds to the obligation imposed upon the judgment debtor by section 6838, the further obligation to discharge all prior liens held by the purchaser. Evidently this was not the purpose of the legislature in inserting this provision. It cannot be supposed that after it had defined and distinguished the respective obligations of the judgment debtor and the redemptioner, it deliberately concluded to annul the distinction and put both in the same category. Looking at the preceding provisions of the section, it seems clear that the intention was to declare that if the judgment debtor redeem from a redemptioner, he must make the payments which have been made by the redemptioner. That this is so is suggested by the clause immediately preceding, "but in all cases the judgment debtor shall have the entire period of one year from the date of sale to redeem the property," and also the one immediately following, "if the debtor redeem, the effect of the sale is terminated and he is restored to his estate." The first of these serves to put beyond question the right of the debtor to redeem from a redemptioner at any time

within the period of one year; and the latter to relieve the debtor from the obligation to observe any of the requirements as to notice which must be observed by the redemptioner, both in this section and in section 6841. This construction harmonizes the two provisions by reconciling their apparent inconsistency, and gives certain meaning to every provision of both.

We have not been referred to any case which has expressly construed such a provision; but the supreme court of California, in *Campbell* v. *Oaks,* 68 Cal. 222, 9 Pac. 77, has by implication given the provision the same purport we have given it above. In that case the purchaser at the sale was a member of a co-partnership which held a judgment lien prior to that of the judgment creditor at whose instance the sale was made. The purchase had been effected on behalf of the firm and with firm money, the purchaser holding the title in trust for the firm. Within the period of redemption the judgment debtor tendered to the sheriff the amount of the purchase with interest, *etc.,* in order to effect redemption, and demanded a certificate, which was refused. Action was brought by the debtor to compel the issuance of the certificate. The trial court denied relief, but the supreme court reversing the judgment, said: "We cannot see how the firm obtaining a judgment against the same defendant in the superior court could have been prejudiced by a redemption from the sale under the second judgment, as the lien of the first judgment was in no manner affected thereby. It was simply an attempted redemption by the judgment debtor whereby the sale under the second judgment would have beeen wiped out." The court evidently regarded the firm as a purchaser having a prior lien. Hence, since sections 702 and 703 of the Code of Civil Procedure of California are substantially identical with sections 6838 and 6839, *supra,* the decision is directly in point; for the conclusion stated cannot be justified upon any theory other than that the provision relied on by counsel does not relate to the obligation due from the debtor to the purchaser, but to that due from him to the redemptioner.

We have assumed in this discussion that both the defendant's judgments were prior liens upon all the plaintiff's property. In fact, the unpaid balance of the judgment in cause 1602 was not a prior lien within the meaning of the statute, on the Knudson ranch and the mining claims, because it was the judgment under which these properties were purchased. It is also doubtful whether the judgment in cause 1608 was a lien upon any of the property sold under the foreclosures, because the judgment was not docketed until July 22, 1909, after the last foreclosure sale had been made. It is not necessary to consider these matters. The defendant can have no just cause of complaint. By the redemption which we shall hold the plaintiff effected, he will get the amounts due him in full, and at the same time will have ample security for the amounts due on these judgments; for both will become liens upon all the property as soon as the redemption is effected, to be enforced by him at his pleasure.

6. The evidence discloses that the plaintiff did not deposit the amounts tendered or retain them in his possession in readiness [13, 14] to be paid over to the defendant upon demand, down to the date of the trial, and bring them into court when he instituted this action. He did not, therefore, lose his right, however. Section 4949 of the Revised Codes, declares: "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation and has the same effect upon all its incidents as a performance thereof." Whatever may be the view entertained by the courts elsewhere, this section establishes the rule in this jurisdiction. It is clear and explicit, and its terms cannot be misunderstood. It is true the offer does not discharge the debt due, for nothing short of payment or deposit in conformity with section 4944 will have this effect; but it does have the same effect upon all the incidents of the obligation as actual payment. If the debt is secured by a lien upon property, or by sureties, the tender operates as a release of the lien or the sureties, as the case may be, and leaves the creditor

to his personal claim against his debtor. (38 Cyc. 163; *Thomas v. Seattle Brewing etc. Co.,* 48 Wash. 560, 125 Am. St. Rep. 945, 15 Ann. Cas. 494, 15 L. R. A. (n. s.) 1164, 94 Pac. 116; *Ferrea v. Tubbs,* 125 Cal. 687, 58 Pac. 308; *Moore* v. *Norman,* 43 Minn. 428, 19 Am. St. Rep. 247, 9 L. R. A. 55, 45 N. W. 857; *Kortright* v. *Cady,* 21 N. Y. 343, 78 Am. Dec. 145.) After the tender has been made and refused, it is not necessary in order to keep it good that the money be brought into court. (*Ashley* v. *Rocky Mt. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765; *Thomas* v. *Seattle Brewing etc. Co., supra; Ferrea* v. *Tubbs, supra; Moore* v. *Norman, supra; Wadleigh* v. *Phelps,* 149 Cal. 627, 87 Pac. 93; *Christenson* v. *Nelson,* 38 Or. 473, 63 Pac. 648; *Weeks* v. *Baker,* 152 Mass. 20, 24 N. E. 905; *Leet* v. *Armbruster,* 143 Cal. 663, 77 Pac. 653.) It was sufficient that the plaintiff, having established his unconditional tenders, brought the amounts into court when directed to do so. As heretofore stated, his ability and willingness to pay at any time is demonstrated by the fact that he tendered the amounts due, unconditionally, and subsequently at the termination of the trial deposited the money with the clerk.

7. The contention that the plaintiff forfeited his right to relief by reason of his delay in bringing the action is without [15] merit. The evidence discloses nothing further than that he permitted the lapse of fourteen months before filing his complaint. This court, following the rule recognized by the courts generally, has repeatedly held that mere delay short of the period of limitation prescribed as a bar to the particular action does not require the imputation of laches. (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631.)

Several other contentions made by counsel are not of sufficient merit to require special notice. The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

ON MOTION FOR REHEARING.

(Submitted January 31, 1916.   Decided February 1, 1916.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In their petition for a rehearing in this case, counsel insist that the court in the consideration of sections 6838 and 6839 of the Revised Codes fell into error in making this statement found in paragraph 5 of its opinion: "It must be borne in mind that the two sections were enacted at the same time and as the provisions by which the privilege granted by section 6837 was to be made available." From an exact historical point of view the criticism of counsel is justified. Section 6838 was first enacted by the territorial legislature in 1867 as section 231 of the Civil Practice Act (Laws 1867, p. 181), whereas section 6839 was first enacted in 1877 as section 331 of the new Code of Civil Procedure (Laws 1877, p. 129). Sections 6837, 6838 and 6839 were all included in this Code, and, in the opinion of the court, taken together with the preceding and following sections, were intended to cover the whole subject of redemption from sales under execution and foreclosure, and to make definite and certain not only the privileges conferred by section 6837, but also the mode by which it could be exercised. Hence we concluded that, whatever may have been the provisions on the subject theretofore, sections 6838 and 6839, having been incorporated in the same Act, are to be considered as enacted at the same time to be interdependent and to be construed accordingly. From this point of view the criticism of counsel is without merit.

It is further insisted that the court erroneously decided, in paragraph 4 of this opinion, that the judgment debtor is not entitled to possession after sale and during the period of redemption. The court did not so decide. It merely noted, in passing, the fact that there is no express provision in the statute declaring this right, whereas section 6843 seems "to imply that the judgment creditor (who has become the purchaser) is entitled to

demand and receive the value of the use and occupation during that period.'' The question of the debtor's right did not arise, and therefore there was no intention to decide it. However, lest the language referred to may mislead, we now say that the question is expressly reserved until a case is presented rendering its decision necessary.

The other contentions of counsel were all made in oral argument and in their briefs. Upon due consideration they were overruled. After further consideration we do not think a rehearing upon them would induce us to change our conclusion.

The rehearing is denied.

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.